MILLETT, PLAINTIFF IN ERROR, v. BARTH, DEFENDANT IN ERROR.

1. COMMISSIONS EARNED, WHEN.

A broker employed to sell real estate is entitled to his commissions when he has produced a purchaser who is able and willing to buy the property upon the terms proposed by the owner.

2. COMMISSION OUT OF PURCHASE MONEY.

Under a contract providing for the payment of commission out of the purchase money, the broker becomes entitled thereto, upon a tender by the purchaser of the price fixed, although the owner refuses to accept the same.

*Error to the Superior Court of the City of Denver.*

Messrs. OSBORNE & TAYLOR, for plaintiff in error.

Messrs. ROGERS, SHAFROTH & WHITFORD, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The plaintiff in error, Nelson Millett, as plaintiff below, in his complaint alleges that he was employed by the defendant to sell certain parcels of real estate therein described; that according to the agreement defendant was to pay plaintiff ten per cent of the amount of all sales made by him under said contract; that plaintiff in pursuance of his contract sold portions of said land at the prices fixed by the defendant to divers persons, naming them. The plaintiff prays judgment for commissions upon such sales under this contract.

The defendant answering, denies the employment as alleged in the complaint. He admits that he authorized plaintiff at one time to sell a portion of the lands described, but avers that it was expressly understood and agreed that the defendant could withdraw the land from sale at any time; denies that defendant was to pay plaintiff ten per cent commission; denies that plaintiff sold any of this property to any of the persons named in the complaint, or to any other person..

For a second defense it is alleged that defendant agreed to allow plaintiff to negotiate the sale of one or two ten acre tracts of this land, but that defendant could withdraw the property from sale at any time. That before any sale had been made, defendant changed the price of said land and notified plaintiff to withdraw the land from the market. To this answer a reply was thereafter filed. This reply consists first, of a general denial of all matters inconsistent with plaintiff's complaint; and for a further reply plaintiff denies that defendant could withdraw the land from sale; alleges that plaintiff had an option to sell the said land for a period of three months; denies that defendant could advance the price of said land during that time; denies that defendant notified the plaintiff not to sell said land; and denies his right to withdraw the land from sale within the three months. Upon these issues the cause was called for trial. At the con-

clusion of plaintiff's testimony, upon motion of defendant, a judgment of nonsuit was entered. From that judgment this appeal was taken.

The evidence introduced at the trial came largely from the plaintiff himself. Other witnesses, however, were introduced whose evidence tended to corroborate this testimony. The evidence shows that the plaintiff, at the time of the transactions with Mr. Barth, was engaged in the real estate business in the city of Denver; that early in the month of April, 1887, he made a contract with Mr. Barth with reference to the sale of certain land near the city of Denver; that according to this contract he was to have the exclusive agency for the sale of these lands for the period of ninety days; that plaintiff after making this contract immediately began hunting up customers and taking them out to view the premises for the purpose of effecting a sale. The said land being some distance from the city and the weather stormy, the sale " was slow." That prior to the 26th day of April, plaintiff took two parties to this land, viz., N. O. Vosberg and Miss E. L. Folsom; that about this time he was visited by Mr. Barth, who informed him that he thought they ought to get a better price for the land. That plaintiff at this time had practically closed the sale of several ten acre tracts of this land and so informed Mr. Barth; that he was so positive that the sales would be closed on at least four pieces that he offered to give Mr. Barth a check for a sufficient deposit. Mr. Barth's reply was: " Oh, no, perhaps they won't come up." The defendant then stated that he had visited that part of the country the Sunday before, and had been offered $200 an acre for the land as a whole, and did not see any reason why, under the circumstances, he should peddle it out in small tracts at the same price. The witness further testified that his reply was that he had acted in good faith with his parties, and had given them the price, and shown them the land, and that they were then ready to close the deal; that he felt committed to them and did not want to be put in a position of doing business in that way with his cus-

tomers; that he (defendant) should not try to raise the
price of his land without giving him a fair chance to close
the negotiations already entered upon.

The witness further testified that Mr. Barth's last words
at this interview were: " The only inducement that I would
have to sell the land to let you make those sales and close
them, would be to get all cash. I am a little hard up and I
need cash, and if I get all cash that would be the only in-
ducement for me to make sales, if you forced me to make
them." Then he added: " Well, sell as little as you can,
perhaps they won't come up." I said: " Mr. Barth, what
is the need of my selling at all if you won't ratify the sales ? "
He replied: " What you sell you will get your commission
on." The testimony further shows that immediately after
Mr. Barth left, plaintiff went to Mr. Vosberg and told him
that if he desired to take the land he must close up the mat-
ter at once, as he had permission to close only the sales that
were then in negotiation. Mr. Vosberg replied that he ex-
pected to take the land and would make the deposit the
next day. The next day he came in and deposited $100
with plaintiff and took a receipt for the same as part pay-
ment upon the land contracted for. The same afternoon
sales were consummated for other tracts to different parties,
and Mr. Barth notified of these facts. Soon thereafter, the
purchasers tendered the purchase price to Mr. Barth, which
was refused, and he also refused to pay any commission to
plaintiff on any of said sales.

This testimony is sufficient to bring the case within the
views expressed by this court *Finnerty et al. v. Fritz*, 5 Colo.
174, and affirmed in *Cawker v. Apple*, 15 Colo. 141. The
testimony for the plaintiff shows that he had produced a pur-
chaser who was acceptable to the owner and able and willing
to purchase on terms offered by the owner. That the failure
to consummate the sale was due entirely to the failure of the
owner to enter into a binding contract.

In support of the judgment of the court below, counsel for
defendant in error urge that the case made by the plaintiff

was not the case stated in his complaint. The argument proceeds upon the theory that the complaint sets forth a case for commissions upon a completed transaction, while the evidence shows that, by the terms of the contract, the plaintiff was only entitled to commissions in case he effected the sale of the property, and then only on the proceeds arising from such sales. It is claimed that the contingency upon which the commissions depended never happened. This failure was in no way chargeable to the plaintiff. He had performed all the duties imposed upon him by the terms of the contract, except, perhaps, the failure to collect the purchase price. As to this, the money having been tendered to the defendant and refused by him, he is not now in a position to claim that plaintiff did not collect the same. To allow an owner of property to defeat a recovery for commissions under such circumstances, would be to put every agent at the mercy of the owner.

The second ground urged in support of the motion for a nonsuit is, that the evidence of plaintiff tended to show that he was not acting for the best interests of his principal; in fact, that he violated the instruction of his principal and for this reason was not entitled to a commission. The argument upon this proposition is, that it was the duty of the plaintiff, instead of endeavoring to consummate the sales which he had so nearly completed before Mr. Barth expressed any desire to rescind the contract, to have discouraged the purchase of the property on the part of those about to buy. No such defense was, however, pleaded. In addition to this we do not conceive that any such duty as claimed rested upon plaintiff. He was employed to sell this property. He had so far effected a sale before anything was said about getting a better price, that nothing remained to be done but to receive the purchase price and make the deed to the property. The testimony does not show that defendant forbade this being done, although he was fully informed of the entire negotiations. The plaintiff understood, as he had a right to understand from the language of the defendant as given in testi-

mony, that he might conclude the sales which he was then negotiating, but that he should not make any new sales.   It is not contended that he violated or attempted to act otherwise than in accordance with this understanding.   The defendant did not at the time undertake to rescind his contract with the plaintiff and take the property from his hands; he simply added an additional condition that if the sales were made they should be for cash, and even this condition was complied with.   Under the circumstances, the court was not warranted, as a matter of law, in concluding that the plaintiff was guilty of such bad faith as to utterly destroy his right to compensation.   The cause should have been submitted to the jury.   The judgment of nonsuit is reversed and the cause remanded.

*Reversed.*