LAWRENCE, APPELLANT, v. WEIR, APPELLEE.

1. BROKER'S COMMISSION.

Before a broker can be said to have earned his commission he must produce a purchaser who is ready, willing and able to purchase the property upon the terms and at the price designated by the principal, and he must have been the efficient agent or procuring cause of the sale.

2. PRACTICE.

A verdict which is so clearly against an overwhelming weight of testimony that, if not willfully wrong, it could have resulted only from misapprehension or mistake of the law, should be set aside.

*Appeal from the District Court of Arapahoe County.*
VOL. III—26

Mr. F. A. WILLIAMS, for appellant.

Mr. RICHARD WOLFE, for appellee.

REED, J., delivered the opinion of the court.

Appellee (plaintiff below) brought the suit to recover commissions alleged to have been earned as a real estate broker in the sale of a residence property on Ogden street in the city of Denver, owned by appellant (defendant), and purchased by F. C. Goudy, Esq. Defendant was the owner of two residence properties, one new, upon Venice street, and the other, the one sold, occupied by himself and family—placed them for sale with one F. Morey, a real estate broker with whom plaintiff was connected in some way, or operating. After the sale of the Ogden street property, Morey assigned his claim for commissions to appellee, who instituted the suit. The case was tried to a jury, resulting in a verdict for the plaintiff for $280. Judgment was entered upon the verdict, and an appeal taken to this court.

Numerous errors are assigned, several upon the admission and rejection of evidence, one upon the refusal of the court to sustain a motion for a nonsuit, several to instructions given and refused, and a general one, that the judgment was against the law and the evidence. Most of them will·be disregarded. A nonsuit should have been granted. There was an absolute failure in the proof of the plaintiff to make a case within the law governing such transactions, and the verdict was so clearly against an overwhelming weight of testimony, that if not willfully wrong it could only have resulted from misapprehension, or mistake of the law.

The law in this class of cases is well settled. First, before the broker can be said to have earned his commission he must produce a purchaser who is ready, willing and able to purchase the property upon the terms and at the price designated by the principal. Second, the broker must be the efficient agent or procuring cause of the sale. He must find the pur-

chaser, and the sale must proceed from his efforts acting as broker. *Babcock v. Merritt*, 1 Colo. Ap. 84; *Hungerford v. Hicks*, 39 Conn. 259; *Tombs v. Alexander*, 101 Mass. 255; *Bernard v. Marmat*, 3 Keyes (N. Y.) 203; *Reese v. Spruance*, 45 Ill. 308; *McClure v. Paine*, 41 N. Y. 561; *Lloyd v. Matthews*, 51 N. Y. 124; *Lyon v. Mitchell*, 36 N. Y. 235; *Briggs v. Rowe*, 4 Keyes (N. Y.) 424; *Murray v. Currie*, 7 Car. & P. 584; *Wilkinson v. Martin*, 8 Car. & P. 5.

To apply the law and make the opinion intelligible, an examination and synopsis of the evidence is necessary. One fact is well established—that appellee and Goudy were negotiating for the sale and purchase of the Venice street property, which would have been consummated but for a stable, considered a nuisance, on land adjoining, which the defendant could not get removed, and the purchase was abandoned. During the negotiations defendant and Goudy had not met; defendant was represented by the plaintiff.

In regard to the Ogden street property, finally purchased, plaintiff testified that while negotiations were going on in regard to the Venice street property "I mentioned the other property to them (Goudy and Cloud), and on the way home pointed out to them the Ogden street property. *I don't know that in pointing it out I said whose it was.*" "I drove Mr. Goudy past the Ogden street property at first * * * and pointed it out while I was showing other properties to Mr. Goudy." Again, "I say Cloud and Goudy went out with me riding, to look at some property, and I pointed out this property to them on the way, riding in the buggy on Ogden street. I went down in front of the property. I did not afterwards take either of them to the property."

This is all of the plaintiff's testimony directly connecting him with the transaction. He never informed his alleged principal that he had a possible purchaser; never gave Goudy the name of the owner of the property, never brought the parties together, nor gave a price, nor showed the property. His only claim is that in company with Goudy and Cloud he drove by the property and from the street pointed it out as

being for sale, and this was shown by Goudy and Cloud to have been a mistake. Considerable evidence by Morey and plaintiff was admitted in regard to negotiations with Cloud, who was assumed to be the agent of Goudy, which was denied by Cloud and Goudy. It is not important to determine which is correct; no agency of Cloud has been established, and the fact was, he was not, at the time of the alleged interviews, the agent of Goudy to buy, but was trying to find some suitable property to sell to him in the hopes of making a commission from the owner, consequently the testimony in regard to interviews with Cloud, without establishing an agency, was improperly admitted. Nearly all the testimony given by Morey was inadmissible; it was in regard to his conversations with the plaintiff—his own agent, and Cloud, the assumed agent of Goudy—but nothing as to the defendant or Goudy, and the sale of the Ogden street property.

Goudy was called *by the plaintiff*, was clearly a disinterested witness. His testimony, by which plaintiff was bound, should have been conclusive of the whole case. He minutely detailed the entire transaction from first to last, showing that the plaintiff in no way participated in the transaction; that plaintiff never mentioned the property as being for sale; that plaintiff did not drive through the street even, and point it out to him; in fact, did not drive into Odgen street at all, and in this he was corroborated by Cloud, who plaintiff alleged was with them on the occasion. Goudy narrated the circumstances under which he first met the defendant, made his acquaintance, and learned of the Ogden street property from him. Goudy was anxious to buy the Venice street property, if the stable nuisance could be abated. After some three weeks' negotiation with plaintiff, without getting anything definite in regard to the removal of the stable, he stopped at the property on Venice street and found Mrs. Lawrence, wife of the defendant, preparing the house for occupancy. With a view, if possible, of concluding a purchase, he asked her where Mr. Lawrence (defendant) could be found, and was directed to the Ogden street property, where

he found him.   It was the first time they had met, or that he
(Goudy) had any knowledge whatever of the property.   The
house was torn up for modern improvements, and defendant
informed him when they were completed the property would
be for sale.   A day or two after Mr. and Mrs. Goudy exam-
ined the house and got the proposed price, after the improve-
ments were completed.

The negotiations between defendant and Goudy commenc-
ed on the basis of the defendant completing a portion of the
improvements and Goudy assuming the balance—there was
a difference in regard to the price.   Goudy, who was going
away, employed Cloud, giving him a certain amount, provided
he succeeded in getting the property at a certain price.
Cloud met defendant, and after two or three interviews the
price was made satisfactory, and on Goudy's return, about
three days after, the purchase was closed.   This was the
only agency of Cloud for Goudy.   This it will be remembered
was the evidence of plaintiff's witness, showing conclusively
no participation of the plaintiff.   This was supplemented and
corroborated in every important particular by the defendant
and by Cloud, who were called for the defense.

Taking the case as made by plaintiff, alone, it will at once
be seen that it did not comply with the requirements of the
law, and when even that was destroyed by his own witness,
Goudy, it is apparent that the court erred in refusing the
motion for a nonsuit.

The verdict of the jury was not only unwarranted by the
evidence, but directly against it.   There was no conflict in
the legal acceptation of the term, the only conflict was be-
tween the plaintiff and his own witness Goudy, whose evi-
dence was destructive of his case.

It is not necessary to review the instructions.   They were
evidently, some of them at least, utterly disregarded by the
jury, and for that reason the verdict should have been set
aside.   Suits of this character, having no legal foundation,
or at least very questionable in character, have become quite

frequent; far too frequent.  The rules of law are plain and simple.  " The broker must be the efficient agent or procuring cause of the sale.  The means employed by him and *his efforts must result in the sale*.  He must find the purchaser and the sale must proceed from his efforts acting as broker."

These facts legally established by competent evidence entitle the broker to his commission, and the courts will aid in its recovery, but nothing short of this will suffice ; it opens up too broad a field for the practice of fraud and the levying of unwarranted tribute.  The law in this class of cases has been strained to its utmost tension, and juries go no further than courts.  Judgments have been obtained on the most shadowy grounds of supposed intervention by the broker. If the broker honestly earns his fee he should have it, but the property owner seems to be the party needing protection.

In this case the broker employed was Mr. Morey.  No contract was made with the plaintiff.  That the claim was not prosecuted by Morey, but assigned to plaintiff, is a circumstance that should not pass unnoticed.

The judgment will be reversed and cause remanded.

*Reversed.*