THE LAMAR MILLING & ELEVATOR COMPANY v. CRADDOCK.

1. CONTRACTS.

If the terms of a contract founded upon mutual promises have not been fully agreed upon, or if either party withholds or has not given his full assent to them, the contract is incomplete.    It binds neither of the parties and can give rise to no cause of action.

2. SAME—DELIVERY.

Every written contract must, to take effect, be delivered, and the delivery must be absolute.

3. SAME.

The delivery of a written contract is any act whereby the party delivering it relinquishes his power over the writing, whether by passing it directly to the other party, or to a third person, with express or implied intent that it shall operate as a contract.

4. VERDICT—WHEN SET ASIDE.

Where there is no serious conflict in the evidence, and the verdict is evidently the result of mistake and misapprehension, or dictated by bias and prejudice, it should be set aside.

*Appeal from the District Court of Prowers County.*

APPELLANT being about to construct a mill and elevator at the town of Lamar, entered into negotiations with appellee to make and deliver the brick necessary for the structure, estimated to be about 450,000.

Correspondence had been had between appellee and appellant in regard to the matter, resulting, as was supposed, in an agreement, and appellant sent a contract to appellee to be executed, which he declined to execute.    About March 10, 1893, Mullen, manager of appellant, went to Lamar, saw

appellee, who said he found he would have to have some money advanced, which was not provided for in the contract. He required $200 to fit up the yard, a sum not to exceed $150 per week for current expenses and to pay men, some indefinite sum for each kiln to buy fuel when ready to be burned; the $200 to be advanced at the time of executing the contract, the money for expenses to be paid weekly, on a sworn statement of appellee of the requisite amount.

Appellant seems to have acceded to the terms, and the parties had the agreement reduced to writing. It was to be duplicate. One copy was made, signed by the parties, and left with the attorney, to have the other prepared. It appears there had been previous talk in regard to appellee giving a bond or security for the advances of money and performance of the contract. No duplicate was made. No contract was delivered to appellee. The manager of appellant took possession of and retained the executed paper. The parties again met and entered upon a discussion of the affair, particularly of the weekly advances. It appears that appellee had previously informed the manager that he had three brothers who would work, and that expenses for hired help would be comparatively light. In the discussion last alluded to, it transpired that the weekly disbursements were to include the wages of the three brothers, and wages to appellee at $3.50 per day.

The previous talk had been in regard to security in the sum of $500. The manager then required $1,000. Appellee declined, refused or neglected to give or offer any security, and claimed the contract as executed and obligatory, required the $200 to be advanced, which was declined, and the whole transaction declared off by the manager. A day or two later a contract was made with other parties, who furnished the brick at an advance of .25 per thousand over the price appellee was to receive. The executed paper was retained and destroyed by appellant's manager. No consideration passed between the parties. It is not claimed that appellee expended any money or made any preparations for the manufacture of

brick.   The suit was brought for profits expected to be made in furnishing the brick.

A trial was had to a jury, resulting in a verdict and judgment for appellee for $300 damages.

Mr. C. C. GOODALE, for appellant.

Mr. D. McCASKILL, for appellee.

REED, J., delivered the opinion of the court.

There are several errors assigned.   Only one or two need to be considered.   The verdict of the jury was against all the evidence in the case.   The testimony shows that there was no contract.   Appellant was to advance a comparatively large amount of money to enable appellee to enter upon the making of brick—$200 to fit up a yard, not to exceed $150 per week for expenses for an indefinite number of weeks, and money to buy fuel—before any return could be had or any brick delivered.

The requirements of the appellee show conclusively that he was without necessary money to enter upon the contract, and probably not pecuniarily responsible for advances.   It is testified by manager of appellant, and conceded by appellee, that security was to be given for advances.   None was offered or given.

The amount was not settled, and certainly $1,000, required by appellant for performance of the contract and advances, was not exorbitant under the circumstances.

It is true that a contract was drawn and signed by both parties.   That, of itself, was of no legal importance, only as an incident or step toward the conclusion or consummation. It was to be in duplicate, and the other was not signed.   The one signed remained in the hands of appellant's attorney. There was no delivery.   The delivery of the contract and receipt of the bond or security should have been contemporaneous, unless waived by appellant.   Until the conclu-

sion and interchange of papers, all incidental acts are only considered *in limine*, and either party may withdraw from the negotiation.

If the terms of a contract founded upon mutual promises have not been fully agreed upon, if either party withholds or has not given his full assent to them, the contract is incomplete. It binds neither of the parties, and can give rise to no cause of action. 1 Add. on Cont., 15; Bishop on Cont., secs. 313, 319, 323, 324; *Routledge v. Grant*, 1 Mood. & P. 717; *Cope v. Albinson*, 8 Exch. 185; *Rommel v. Wingate*, 103 Mass. 327; *Railway v. Unity*, 62 Me. 148.

Not only had there been a failure to furnish bond or security, which would have been done contemporaneously with the execution of the contract, and an essential to its completion, but there was a misunderstanding in regard to the application of the weekly sum of $150 to be advanced for the payment of wages. It was said by appellee that his bills for wages would be comparatively light, as he had three brothers who would work with him. The manager of appellant understood that they were not to have wages advanced, but, on further conversation, it transpired that he not only intended to pay the three brothers full wages weekly, but also intended to pay himself, for his own services, $3.50 per day, weekly, a condition so novel and unprecedented in contracts of that kind, as far as he was concerned, that it must of necessity have created doubts in regard to the *bona fides* of his intentions. At any rate, it is apparent that there was a misunderstanding, and the minds of the contracting parties had not met; consequently, no contract.

The custodian of the signed paper was the attorney of the appellant. There had been no delivery.

"Every written contract must, to take effect, be delivered, and the delivery must be absolute."

"The delivery of a written contract is any act whereby the party delivering it relinquishes his power over the writing, whether by passing it directly to the other party, or to any third person, or otherwise, with the express or implied

intent that it shall operate as a contract." Bishop on Cont., secs. 349, 350; *Fay v. Richardson*, 7 Pick. 91; *Hawkes v. Pike*, 105 Mass. 560; *Thatcher v. St. Andrew's Church*, 37 Mich. 264.

The contract was to be duplicate. Until the signing of both and delivery of one to appellee, there was no contract. The written paper in the possession of the legal agent of appellant was as much in its custody and under its control as if in the hands of the manager. Until fully executed and delivered, the contract was *in limine;* either party could revoke or withdraw.

The following question was by the court submitted to the jury: " The first question for you to determine is: did the defendant make the delivery, the contract in evidence ? "

It was found affirmatively by the jury. It was not only entirely unsupported, but negatived by all the evidence in the case, which clearly showed the contract incomplete and undelivered. The finding of the jury was against the law and the evidence, and must be set aside. The well settled rule of the supreme court and this court is: Where the testimony is *conflicting*, a finding of the jury will not be disturbed. Where there is no serious conflict, and the verdict is evidently the result of mistake and misapprehension, or dictated by bias and prejudice, it should in all cases be set aside. *Ullman v. McCormic*, 12 Colo. 553; *Coon v. Duckett*, 13 Colo. 14; *Newell v. Giggey*, 13 Colo. 16; *Caldwell v. Willey*, 16 Colo. 169; *Hockaday v. Goodwin*, 1 Colo. App. 90; *Chicago Invest. Co. v. Harrison*, 1 Colo. App. 466; *Lawrence v. Weir*, 3 Colo. App. 401.

The judgment will be reversed and the cause remanded.

*Reversed.*