[No. 5419.]
[No. 3077 C. A.]

SILBERBERG V. CHIPMAN.

1. **Brokers—Loans—Commissions—When Earned.**

Where a broker, employed to procure a purchaser or a lender, obtains a purchaser ready, willing, and able to purchase at the price fixed, or a lender ready, willing, and able to lend the amount desired, and on the terms agreed on, he has earned his commission, though the transaction is not completed because of the wrongful conduct of the principal.—P. 23.

2. **Same.**

Defendant employed a broker upon an agreed commission to procure a loan on real estate; and the latter procured a blank application for a loan, which defendant filled out. The application stated that defendant held the undisputed title to real estate in fee; that the proposed mortgage was to be a first lien thereon; and that he did not owe any money to mechanics or others for work done or material furnished thereon. An agent of the proposed lender notified the broker that the loan was accepted, but the proposed lender, on ascertaining that buildings had recently been erected on the property, and that the time for filing liens had not expired, demanded that a bond should be given to protect the lender against liens, which defendant refused to give. Also, after the application had been made, defendant conveyed an interest in the property to a third person, who refused to sign the bond. Held, that, although the loan was not made for either of these reasons, the broker was entitled to his commission.—P. 25.

*Appeal from the County Court of Pueblo County. Hon. L. B. Gibson, Judge.*

Action by C. O. Chipman against Aaron Silber-

berg. From a judgment for plaintiff, defendant appeals.  *Affirmed.*

Mr. A. Moore Berry, for appellant.

Mr. J. T. McCorkle, for appellee.

Mr. Justice Campbell delivered the opinion of the court:

·Defendant Silberberg employed plaintiff Chipman to obtain for him a loan of $11,000, and for procuring it agreed to pay, as commission, $220. The proposed lender of the money was the Penn Mutual Life Insurance Company, and the printed form of application for the loan was one which that company used. The blanks were filled by Chipman at Silberberg's dictation, and the statements therein made were for the purpose of procuring the loan. Among other promises was one that "searches for liens of all kinds  *  *  *  if necessary, *and such other papers as are desired by said company are to be furnished by me*" (Silberberg). The security which the borrower offered was real estate in the city of Pueblo. The application stated that Silberberg held the undisputed title thereto in fee, and that the proposed mortgage for the loan was to be the first lien thereon, and that Silverberg did not owe any money to mechanics, builders or others for work done, or materials furnished, upon the property.

When the application was received at its eastern office, the company, through its western agent, notified the broker that the loan was accepted, and the broker at once notified Silberberg thereof, and the borrower handed the title papers to the property to the broker, who in turn delivered them to the local attorney of the lender for examination.

A short time thereafter the western agent of the lender, as the result of a personal examination of the

property, ascertained that some buildings had recently been erected on the same, and that the statutory time for filing mechanics' liens thereon for labor and materials had not expired, and would not expire for about sixty days, and advised the broker that the company, in such cases, required a bond of indemnity to protect it against liens. When the broker told Silberberg of this fact, the latter said he would not give a bond. The lender insisted that a bond should be given, but Silverberg and his sister, to whom he had deeded an interest in the property after the application for the loan, though they still said they wanted the money, absolutely refused to give a bond. They asserted that the houses and improvements for which liens might be filed had been fully paid for, and that no liens would be filed, and Silberberg offered to furnish written proof thereof, and if it was not satisfactory to the lender, to leave $1,000 cash in its hands with which to pay any just lien claim that might be presented. But the lender refused the borrower's offers, and declined to make the loan without an indemnity bond. The county court, upon this evidence, gave judgment for plaintiff, and defendant appeals.

On these facts, which are undisputed, the sole question is whether the broker earned his commission. Defendant's contention is that the commission was not earned because the loan was not made owing to the wrongful insistence by the lender upon a bond of indemnity. His counsel argues that, under the written application, defendant was not obliged to furnish, and the lender could not require, a bond of indemnity against liens of mechanics or material men, and that when he offered to leave on deposit with the lender $1,000 as a security against possible anticipated liens, or to furnish proof that none would be filed, and the lender refused such offer, this ab-

solved him from the payment of commissions to the broker.

The law applicable to this case is the same as that which governs the rights of a broker who is employed to sell real estate. When the broker obtains a purchaser ready, willing and able to buy at the price and upon the terms agreed upon, or a lender who is ready, willing and able to lend the amount desired and upon the terms agreed upon, the broker has earned his commission if he has been the efficient and procuring cause of the sale or loan, even though the same is not completed because of the wrongful conduct of the principal.—*Squires v. King,* 15 Colo. 416; *Millett v. Barth,* 18 Colo. 112; *Lawrence v. Weir,* 3 Colo. App. 401; *Ross v. Smiley,* 18 Colo. App. 204; *Rundle v. Staats,* 19 Colo. App. 164.

Defendant says he rightfully refused to furnish a bond because his duties are such only as are imposed by the language above quoted from the application, *"such other papers* as are desired by said company"; "such other papers," he says, must be documents of the same kind as the ones specifically mentioned in the same clause—that is, similar to abstracts of title, mortgages, and certificates of absence of tax liens, etc.—and indemnity bonds are not of this description.

The question here involved does not require that the meaning of "such other papers" be determined, for the rights of the parties may be ascertained from other parts of this application. In the application defendant stated that he held the undisputed title in fee simple to the property which he was offering as security for the loan, and that the mortgage which he proposed to give thereon was to be a first lien. By implication, if not by express agreement, defendant thereby represented that he had, for mortgage purposes, a perfect or marketable title to the property

to be given as such security. Under the law of this state, mechanics and material men are given a certain time after the completion of a building or structure on land within which to file their statements claiming a lien for labor done upon, or materials furnished that went into, their construction. It appears in this case without contradiction that buildings had recently been constructed on the premises and that at the time of the negotiations between these parties the time for filing liens thereon by laborers and material men had not expired. Nothing was said by defendant in his application about these improvements, and the broker did not know of them until the lender's agent notified him after the loan was accepted. If it be material here, we say it was not unreasonable, therefore, indeed it was wholly within his rights, and we think quite in accordance with the custom in similar cases, for the lender to exact as a condition for making the loan a bond of indemnity to secure him against future liens, the time for filing which had not then expired. If liens had been filed and established, they would have been paramount to the lien of the proposed mortgage given and recorded after the labor and materials were furnished. The offer of proof that liens did not exist, and would not be filed, and to leave with the lender $1,000 of the contemplated loan as security, if such proof was not satisfactory, were not, in the circumstances, the equivalent of a bond of indemnity. At least, it was entirely competent for the lender to reject the offer, and insist upon the bond, for the reasons stated.

For another reason the lender might have rightfully declined to lend the money. Defendant, after his application, conveyed to his sister an interest in the property, and thereafter he could not give a marketable title as security, as she refused to join in the bond.

It clearly appears that plaintiff fully complied with his contract, and he was entitled to the amount of compensation agreed upon. He obtained a lender who was willing, ready and able to lend the amount of money which the defendant wanted to borrow upon the terms and conditions mutually satisfactory to lender and borrower. In other words, plaintiff brought them together, and their minds met with reference to the loan. The fact that the lender refused to complete it because of a defect in defendant's title, and that defendant refused to furnish the bond, do not deprive plaintiff of his brokerage fee. Indeed, the failure of defendant to obtain the money as a loan was due to his own act, his refusal to give as a security, what he promised to furnish, a marketable title for such purpose.

The following authorities are in point, and sustain the conclusions reached: *Crasto v. White,* 3 N. Y. Supp. 682; *Folinsvee v. Sawyer,* 36 N. Y. Supp. 405; *Van Orden v. Morris,* 42 N. Y. Supp. 473; *Bruce v. Wolfe,* 102 Mo. App. 384; *Ross v. Smiley,* 18 Colo. App. 204; *Middleton v. Thompson et al.,* 163 Pa. St. 112; *Gauthier v. West,* 45 Minn. 192; *Fitzpatrick v. Gilson,* 176 Mass. 477.

The judgment should be affirmed, and it is so ordered.                                               *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.