[No. 6473.]

## ROOT V. BARBOUR ET AL.

REAL ESTATE BROKER RIGHT TO COMMISSIONS—To entitle a real estate broker to commissions it must appear that he was the procuring cause of the sale—(404).

The evidence examined and *held* insufficient to maintain the broker's action—(403, 404).

*Error to Denver District Court*—HON. HUBERT L. SHATTUCK, Judge.

Mr. FRANK McDONOUGH, SR., Mr. FRANK McDONOUGH and CLARENCE J. MORLEY for plaintiff in error.

Messrs. DORSEY & HODGES for defendant in error.

Plaintiff in error brought suit to recover from defendants compensation at the rate of 12 1-2 cents per acre for a sale he claimed to have effected of eighteen sections of land in the vicinity of Byers. At the conclusion of the testimony, the court, on motion of defendants, directed the jury to return a verdict in their favor. Plaintiff was engaged in the real estate business, and had advertised lands for sale in Colorado quite extensively through newspapers and circulars. Among other tracts advertised was what was known as the Lapham ranch, located in the vicinity of Elizabeth. This property consisted of several thousand acres, and appears to have been owned, or in some way controlled, by plaintiff. Defendants were also engaged in the real estate business, and had listed, owned, or were interested in a tract of land near Byers, consisting of eighteen sections. Plaintiff testified that they employed him to negotiate a sale of these lands at $3.25 per acre, and agreed that if he found a purchaser, they would pay him at the rate of 12 1-2 cents per acre. One of the circular letters sent out by plaintiff was received

by a real estate firm at Fremont, Nebraska. Evidently this circular described the Lapham tract and none other. In response to this circular, a Mr. Richards, for the firm of which he was a member, wrote to plaintiff, inquiring how long they could have, to investigate the proposition relative to the Lapham tract. To this, judging from telegrams that passed between the parties later, the plaintiff replied by letter. The telegrams mentioned consisted of one informing plaintiff that Richards and associates would arrive on a specified date, to which the plaintiff replied that he would hold the land for their inspection until their arrival at that time. Other telegrams between plaintiff and other parties apparently interested with Richards and his associates, were sent, one of which was by plaintiff, to the effect that he would pay, as a commission, one thousand dollars if a sale was made at $4.75 per acre.

Richards and his associates arrived in Denver at the time designated, and were met by the plaintiff. They went to a hotel for breakfast. After breakfast they left the hotel. Plaintiff wanted them to go to a Mr. Clow's, who had land for sale. They objected, stating that they wanted to see a Mr. Ferguson, who was the Union Pacific agent at Denver. When they arrived at Mr. Ferguson's office, the following conversation took place, as detailed by plaintiff:

"Mr. Ferguson says: "Hello, boys, what are you doing out here?" They says: "We are out looking for land." "Well," he says, "the biggest thing I know of is these 18 sections of Barbour's." He says: "Barbour has 18 sections; that is the cheapest thing in the country." That is the words. Richards turns around and says : "How is that?" And I says: "That is a good piece of land. I have never seen it, but we will go down."

Plaintiff admits that up to this time he had not said anything to either Mr. Richards or his associates about these eighteen sections; had never called their attention to, or said anything to them about, this land; that the land described in his circular letter which Richards had received did not mention this tract; and that the letter and telegrams mentioned referred solely to the Lapham tract.  He also admits that so far as he knew, they had never heard of the land until it was called to their attention by Mr. Ferguson, never did tell them that he had it listed for sale; and never offered it to them.  Plaintiff says that after informing Richards and his associates that they would go down and see Mr. Barbour, Ferguson said: "I will go along with you"; and, continuing, testified: "We went down there and Barbour and Louden was out.  Then Ferguson took us there and introduced us to Wantland, and so I says to Wantland: "Now, I will bring these men back in about half an hour.  Tell Mr. Barbour to wait here when he comes in," and we went to the Government Bureau, and then went right back, and at that time Mr. Barbour and Mr. Louden was both there."

In response to a question, asking him to state what was then said, he testified:

"A.   Yes, I told him, Mr. Barbour, they wanted to know about the 18 sections, and we sat right down and talked about it, and planned how to see my land and the 18 sections both.   Q.   What did you say about the 18 sections of land then?   A.   Why, I said I had never seen it, but I had no doubt it was a fine piece of land.   I don't know just all that we did say, but I know I did say that much."

In the afternoon plaintiff, with Richards and his party, took the train for Elizabeth, for the purpose of inspecting the Lapham ranch, which is located about midway between Elizabeth and Byers.  At Elizabeth plaintiff hired a livery rig which took them to the

ranch, and then returned to Elizabeth. The following day they examined the ranch, and the next morning plaintiff hired a rig to take them to Byers. The party went to Byers to meet Louden, who had evidently arranged to take Richards and his party to examine the eighteen sections. Louden met them there and took Richards and one of his party to see the land. Plaintiff did not go with the party any further, but returned to Denver, and did not incur any expense of the trip from Byers to the eighteen sections. The Barbour tract was located beyond Byers. It is apparent from the testimony that plaintiff took Richards and his party to Byers, instead of returning via Elizabeth, pursuant to an arrangement that Louden would meet Richards and his associates there and take them to the eighteen sections, and that this arrangement was for the convenience of the Richards party.

It does not appear that plaintiff ever informed the Richards party that he had the eighteen sections for sale, and when asked what he had said to them in recommending this land, he answered: "I told them that I had never seen it, but I expected it was good; that it laid nice, and I thought it was a very good piece of land. I just talked in a general way, and tried to make both things look smooth and nice."

Evidently what he did say abut the eighteen sections, while not disparaging, was intended to induce the Richards party to purchase the Lapham ranch, rather than the eighteen sections. This conclusion is sustained by the testimony of Richards, which is not denied by the plaintiff. Richards says that what plaintiff said about the eighteen sections was rather to their discredit than credit; that he made the Lapham ranch appear to be very superior property, and that he was urging him to purchase it; that he never suggested or urged upon him the purchase of the eighteen sections.

Lapham had taken the party to Byers from the ranch, and evidently was interested in that tract. He had interviewed the livery stable man who was to take the Richards party, with Louden, to see the eighteen sections. Regarding this, plaintiff testified that Lapham said to him: " 'That livery stable man is going out there, and if you can give him a little money, he will talk and advertise the land and do us lots of good,' and I says: 'I will not object to giving a five dollar bill, if he will talk up the country.'

Q. You paid him to praise up what Mr. Lapham asked him to do? A. Mr. Lapham said he was quite a talker, and could run the country down or praise it up.

Q. Lapham gave him the directions, and you gave him the money? A. Yes."

Richards and one of his party inspected the eighteen sections, and returned to Denver. Plaintiff met them the next morning and says that he did not make any efforts then or later to sell the eighteen sections. That day they entered into contracts to buy his land. They then left him and went to the office of defendants and purchased, or entered into contracts to purchase, their land.

Mr. JUSTICE GABBERT delivered the opinion of the court.

The only question necessary to determine is, whether there is testimony tending to prove that plaintiff was the procuring cause of the sale. It is clear there is not. He never advertised it. Richards and his associates were not induced to come to Denver with a view of purchasing the eighteen sections. On the contrary, they came here at the suggestion or solicitation of plaintiff, to purchase the Lapham ranch. He never mentioned the eighteen sections until Mr. Ferguson spoke about them. He never told Richards, or

either of his party that he had this property for sale, and never offered it to them. It was Ferguson who first informed them about it. He went with them to the office of the defendants. Plaintiff may have later introduced Richards and his associates to the defendants, but we think it is clear from the testimony that they went to the office of the latter the second time because they were interested about the eighteen sections from what Ferguson had said, and not because of anything that plaintiff may have said to them. Arrangements were made to inspect the Lapham ranch, and the eighteen sections, which would be the most convenient for the Richards party. Plaintiff took the party to inspect his property, and endeavored to induce them to purchase it, which they did. From there they went to Byers, to meet Louden, as previously arranged, who then took charge of the party, the plaintiff returning to Denver. He had never seen the eighteen sections, and consequently, could not give them any information regarding that land. The talk that Lapham had with the livery stable man at Byers was evidently for the purpose of inducing him to talk favorably about the Lapham tract. When the Richards party returned to Denver, plaintiff did not talk to them about the eighteen sections, or make any effort to sell that property to them. After entering into a contract to purchase his ranch, they left him, went to the office of the defendants and purchased their tract. In short, there is not a scintilla of evidence from which it can be inferred that anything said or done by plaintiff induced the Richards party to purchase the eighteen sections.

Before a broker is entitled to compensation for a sale of real estate, it must appear there is testimony tending to establish that by his efforts a sale was effected.—*Wheeler v. Beers*, 45 Colo. 547: *Chaffee v. Widman*, 48 Colo. 35; *Geiger v. Kiser*, 47 Colo. 297; *Babcock v. Merritt*, 1 Colo. App. 84; *Lawrence v. Weir*, 3 Colo. App. 401; *Cole v. Thornburg*, 4 Colo. App. 95.

The judgment of the district court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.