## No. 23216.

WOODROW W. WATSON *v.* UNITED FARM AGENCY, INC.

(439 P.2d 738)

Decided April 15, 1968.    Rehearing denied May 6, 1968.

KLINGSMITH & RUSSELL, for plaintiff in error.

BROWN & BROWN, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

THIS is an action by a real estate broker, the United Farm Agency, Inc., against a vendor of real property, Woodrow Watson, for a brokerage commission allegedly owing under a Property Listing Agreement. After trial to the court judgment was entered in favor of the United Farm Agency, to whom we will refer as the Agency, for the amount of the claimed commission. Watson now brings this writ of error to review the district court judgment.

The record shows that Woodrow Watson owned a small ranch near Paonia in Delta county, Colorado. On November 6, 1965, he listed the property for sale with the Agency. His listing agreement provided in pertinent part:

"(B) You are employed to procure a purchaser, ready, willing and able to buy said property at the price and terms as stated herein or as otherwise subsequently authorized by me. * * *

"(C) I agree to pay you forthwith as commission 10% of the selling price, when a purchaser is procured through you, or your representative, at the stated price and terms, or at any other price and terms acceptable to me.

"(D) The right to sell said property by my own efforts * * * is hereby reserved and if sold, no commission or other charge will be due you; * * *."

The agreement provided that the prospective purchaser should pay as the purchase price of the property the sum of $20,000 on the following terms: $6,000 in

cash upon closing; assumption of a Federal Land Bank loan for $4230 secured by a deed of trust on the property; to assume and pay an unsecured debt of $2865 to one Marion Martin; and to pay the balance of the $20,000 purchase price in $500 annual installments at six per cent interest.

Watson at this time was indebted to Glenn S. and Ruby E. Martin for the sum of $68,000. When he fell behind in his repayment of the debt the Martins demanded additional security for the indebtedness. Watson and his wife Carley accordingly executed an instrument purportedly conveying title to the Paonia ranch to the Martins for a recited consideration of $14,230. This instrument stated that:

"The grantors [Woodrow and Carley Watson] shall have the right to re-sell said property until June 15, 1966, and in the event a sale is consummated for a price in excess of the purchase price hereinabove stated, the grantors shall be credited with such a sum on their existing note with the grantees. Of the purchase price hereinabove stated, the sum of $10,000.00 shall be credited on the grantors' note and the sum of $4,230.00 is represented by the grantees assuming the balance of the Federal Land Bank of Wichita loan secured by the within described premises." All parties concede that the instrument, although in form a warranty deed, was intended solely to secure Watson's outstanding debts to the Martins.

The day after execution of this security instrument, December 29, 1965, Watson wrote the Agency to modify the terms of the Property Listing Agreement. He stated in the letter: "In view of our desire to dispose of our Paonia property as soon as possible we would like to reduce the terms on the selling price to a down payment of $2905. * * *"

There was no reference to Watson's purported conveyance to the Martins.

In February 1966 the Agency secured an offer from Donald and Evelyn Laux to purchase the property for

the sum of $18,000. The Lauxes executed a formal Agreement of Sale dated February 22, 1966, by which they offered to pay $3,000 on closing, to assume the Federal Land Bank indebtedness and the Marion Martin loan, and to pay the balance of the purchase price on Watson's terms. The Agency forwarded the Lauxes' Agreement of Sale to Watson who consulted his attorney P. C. Klingsmith on the matter. Watson informed Klingsmith that it would be necessary to obtain the Martins' signature before the contract of sale could be consummated, and that other minor changes were to be made in the Agreement of Sale. At Watson's direction Klingsmith wrote the Agency on March 2, 1966, enumerating the necessary changes in the Agreement of Sale. Paragraph 3 of Klingsmith's letter stated: "The seller's names are Glenn S. Martin and Ruby E. Martin, rather than the Watsons. The Watsons heretofore transferred the property to the Martins, but retained an equitable interest in the premises and the right to sell the same during the fore part of the year 1966. *Upon receipt of the contract, we will procure the Martins' signatures thereto as sellers."* (Emphasis added.)

The following day, March 3, the Agency's representative, Roger Blouch, wrote Klingsmith that the Lauxes were "in accord with all the changes and directions" required in Klingsmith's correspondence. Blouch made the necessary changes on the Agreement of Sale above the Lauxes' signatures and returned the amended instrument to Klingsmith for the Martins' approval.

Watson subsequently failed to secure the Martins' signatures on the Agreement of Sale because they insisted that they receive either $10,000 cash from the sale or a first mortgage on the property to secure payment of the balance of the Lauxes' purchase price. The Federal Land Bank, as noted above, held the existing mortgage on the Paonia ranch and the Lauxes declined to satisfy this mortgage in order to provide the Martins with their first mortgage. The Martins' demand was not included

in Watson's terms of sale, which instead provided that the Lauxes were merely to *assume* the Federal Land Bank mortgage.

The principals thus arrived at an impasse in their negotiations. Finally, in April 1966, Watson abandoned the Lauxes' negotiations and conveyed the property to a third party for $18,000. This purchaser, procured without the assistance of the Agency, agreed to the Martins' demand for a first mortgage.

■ The Agency's right to receive the brokerage commission, under these circumstances, depends upon the terms of the listing agreement and the duties actually performed by the broker. *Consolidated Oil & Gas, Inc. v. Roberts,* 162 Colo. 149, 425 P.2d 282; *Scott v. Huntzinger,* 148 Colo. 225, 365 P.2d 692. Terms of the listing agreement set forth above conditioned the broker's right to recover the ten per cent commission upon the Agency's procurement of a purchaser ready, willing and able to buy the ranch at the stated price and terms, or as otherwise subsequently established by Watson.

■ The record fully supports the trial court's finding that the Agency performed all conditions precedent to Watson's duty to pay the ten per cent commission. Donald Laux, the purchaser presented by the Agency assented to all the terms and conditions enumerated in Watson's letter of March 2, 1966, and it is undisputed that Watson considered the Lauxes to be suitable purchasers. Having produced for its principal a person ready, willing and able to purchase the ranch upon the principal's terms, the Agency became entitled to recover under the brokerage agreement. *Circle T. Corporation v. Crocker,* 155 Colo. 263, 393 P.2d. 744; *Pueblo v. Leach Realty Co.,* 149 Colo. 92, 368 P.2d 195; *Millett v. Barth,* 18 Colo. 112, 31 P. 769.

■ Watson denies that any commission is due, on the reasoning that a broker cannot recover his fee where the principals merely conclude an executory contract, performance of which depends upon fulfillment of an

express condition precedent. See *Britschgi v. McCall,* 41 Cal. 2d 138, 257 P.2d 977; *Leipsic v. Taggart,* 101 Cal. App. 726, 282 P. 400. It appears, however, that Watson erroneously construes the language of the March 2 counter offer. The phraseology "Upon receipt of the contract, we will procure the Martins' signatures thereto as sellers" employs words of promise rather than words of condition. By these terms Watson unambiguously undertook the duty of obtaining the Martins' signatures on the Agreement of Sale. 3A A.Corbin, Contracts §633 (1960 ed.); Restatement of Contracts §257. The Agency's right to the brokerage commission could not be defeated by Watson's failure to perform according to the agreed terms of sale. C.R.S. 1963, 117-2-1; *Millett v. Barth, supra.*

Watson asserts that it was his intention to make the Martins' approval a condition precedent to consummation of the sale, and that he never assented to the responsibility for obtaining the Martins' signatures. Klingsmith's letter of March 2 embodying different terms and conditions, Watson contends, exceeded Klingsmith's actual authority and was unjustifiably relied upon by the Lauxes. This contention is directly contradicted by Watson's testimony that he instructed Klingsmith to draft the March 2 correspondence and mail it to the United Farm Agency. Watson is consequently bound by Klingsmith's act performed within the scope of the latter's apparent authority. *Commercial Standard Insurance Co. v. Rinn,* 100 Colo. 76, 65 P.2d 705.

The judgment is affirmed.

MR. JUSTICE McWILLIAMS not participating.