# SUPREME COURT

#### OF THE

## STATE OF COLORADO

### APRIL TERM, 1912

[No. 6965.]

### FINNERTY v. STRATTON'S ESTATE.

1. EVIDENCE—*Parol to Vary Writing*—A broker employed to find a purchaser for certain securities, takes from his client an option in writing entitling him to purchase the securities for a specified sum, to be paid within a specified time. He assigns this option to a third person, who tenders the stipulated sum at the place, and within the time, prescribed in the option. The broker suing for his commissions is entitled to show that the option was taken with the understanding on the part of his client that the party to whom it was assigned, and not the broker, was the purchaser, and that the assignment was made in pursuance of an arrangement with his client that it should be so assigned. Such evidence does not tend to vary the terms of the writing.

2. APPEALS—*Party Bound by Position Below*—Where in the court below certain writings are treated as in evidence, e. g. by objections to oral evidence, by reason of such writing, as concluding all previous negotiations and discourse, he will not be heard to urge in the court of review that the papers were not in evidence, even though the record fails to disclose any formal offer thereof.

(17)

3. CONTRACTS—*Consideration*—A contract reciting the payment of one dollar "and other valuable considerations," etc., shows a consideration, and nothing appearing to the contrary the contract binds the promisor.

4. ——*Binding Upon Executor*—The death of one who has employed a broker, and through the efforts of the broker has entered into a binding contract to dispose of the subject matter of the broker's employment of which the broker afterwards tenders performance, in no manner affects the rights of the broker; performing his contract of employment, the personal representative is liable to him for his commissions.

5. ——*Who May Assail Validity*—Only the parties to a contract, or those standing in privity with them or one of them, can question its validity. One holding an option to purchase certain securities treats it as assigned to another, who acts accordingly. The executor of the one granting the option will not be heard to deny the assignment.

6. BROKER—*Right to Commissions*—A broker employed to find a purchaser for certain securities, does not entitle himself to a commission by producing one who merely accepts an option; but if such purchaser subsequently tenders performance of the contract, in accordance with its terms, the executor of the vendor is liable to the broker.

*Error to El Paso District Court*—Hon. W. S. MORRIS, Judge.

Messrs. SCHUYLER & SCHUYLER, Mr. EDWARD C. STIMᴛson, Mr. JULIUS C. GUNTER, Mr. HENRY E. LUTZ, Mr. P. M. BRERETON, for plaintiff in error.

Messrs. CHINN & STRICKLER, for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Claimant file in the county court of El Paso county a claim against the estate of W. S. Stratton in the sum of thirty-two thousand five hundred dollars, for procuring a purchaser for certain property owned by Stratton at the time such services were claimed to have been rendered. The trial in the county court before a jury resulted in a verdict in favor of the estate. From the judgment accordingly, the claimant appealed

to the district court, where a second trial was had, with the
same result.    Claimant brings the case here for review on
error.

The claim is for services as a broker in negotiating a sale
of notes secured by mortgages held and belonging to Stratton
on the Brown Palace hotel and other property, in the city of
Denver, and the decree foreclosing this security.    The prin-
cipal point presented for consideration by counsel for claimant
is the ruling of the trial court, excluding what is asserted to
have been material and relevant testimony offered on the part
of claimant.

Mr. T. J. O'Donnell was a witness on behalf of claimant.
His testimony was to the effect that he and claimant called
upon Stratton in Colorado Springs; that claimant introduced
him to Stratton as a prospective purchaser, at which time
Stratton stated he wished to sell the property, and that he had
employed claimant to find a purchaser; that witness stated he
was willing to undertake the purchase of the securities, but as
he did not intend to do so with his own money, it would be
necessary for him to go east and interest parties there, and
that he would not undertake such a matter without a written
option or contract, so that if he succeeded in raising the money
he would be certain that the contract would be carried out.
The result of the conference was, that Stratton executed a con-
tract or option running to claimant.    This contract recited, in
substance, that Stratton, in consideration of one dollar to him
in hand paid, by, and for other valuable considerations moving
to him from, Michael Finnetry, gave and granted unto Fin-
nerty, his executors and assigns, the right and option to pur-
chase the property above mentioned, for the sum of six hun-
dred and fifty thousand dollars, to be paid on or before sixty
days from date, and that on payment of that sum promptly,
Stratton agreed, for himself, his executors and administrators,
to deliver the property mentioned, and to assign, or procure
to be assigned, the decree foreclosing the security.    The con-
tract further provided that the payment of the purchase price

at the option of Finnerty, his executors, administrators or assigns, might be made by depositing the amount of the purchase price to the credit of Stratton in the Denver National Bank, of Denver, Colorado. The contract was dated July 26th, 1902.

Contemporaneously, or practically so, with the execution of the contract, Finnerty executed and delivered to O'Donnell a declaration to the effect that the option obtained that day from Stratton to purchase the mortgage on the Brown Palace hotel, in Denver, and the decree foreclosing the same, was obtained by him for O'Donnell and his clients, and would be held, disposed of, or assigned as he might direct. Shortly after the execution of this contract, Stratton died. Within the life of the contract O'Donnell tendered to the Denver National Bank, for the credit of the Stratton estate, the amount which he was required by its terms to pay for the property mentioned in the contract, and demanded the assignment and delivery thereof, which tender and delivery of the property involved were both refused, for the reason that the property was not in the possession, or under the control, of the bank. Later, the representatives of the estate took up the contract, paying Mr. O'Donnell a considerable sum to release his rights thereunder.

During the examination of Mr. O'Donnell, counsel for the estate presented the contract and declaration of Finnerty, and objected to all further oral testimony, on the ground that all prior negotiations were merged in these written documents. Claimant then offered to prove by the witness that it was stated at the time, and understood between Stratton and witness, that the latter was the purchaser of the property, and not Finnerty, and that the option was simply placed in Finnerty's name because Stratton objected to giving the contract to O'Donnell, for the reason that he was a lawyer. Defendant objected to this offer, which was sustained. The claimant further offered to prove by the witness that the declaration signed by Finnerty was signed by him in response to, and as the re-

sult of, Stratton's arrangement with the witness, that the contract should be taken in the name of Finnerty, but by him assigned to O'Donnell. This offer was objected to, and also sustained. These rulings were made, apparently, upon the theory that claimant could not show that the writings mentioned were the result of the employment of Finnerty by Stratton to negotiate a sale of the property involved. In other words, by this ruling the court, in effect, held that all previous negotiations or arrangements between Finnerty and Stratton were merged in the written option executed by Stratton. We think this ruling was wrong. The object of the evidence objected to was to show that the option executed by Stratton was for the purpose of carrying out the arrangement between himself and Finnerty, by which the latter was employed by him to find a purchaser for the property mentioned. Pursuant to this employment, Finnerty produced a prospective purchaser, and, agreeable to Stratton, took from him an option to purchase, with the understanding that it would be assigned to O'Donnell. Parol evidence to establish these facts would not violate the rule, that parol contemporaneous evidence is not admissible to vary the terms of a valid written instrument, for the reason that it is not applicable when the object and effect of such evidence is to establish the execution of an agreement which it does not purport to show, or when it is but an incident or result of such agreement, or for the purpose of carrying it into effect.—*De St. Aubin v. Marshall Field & Co.*, 27 Colo. 414; *Huckabee v. Shepherd*, 75 Ala. 342.

As applied to this case, the rule is, that a broker employed to effect a sale, in order to be entitled to commissions, must establish that his efforts were the procuring cause of the sale which the principal made to the purchaser with whom he entered into negotiations through the efforts of the broker.— *Chaffee v. Widman*, 48 Colo. 34; *Wheeler v. Beers*, 45 Colo. 547.

As further applicable to the facts of this case, the rule is, that if, by the efforts of the broker, a binding contract is en-

tered into between the principal and a prospective purchaser which the principal or his legal representatives wrongfully refuse to carry out, the broker becomes entitled to his compensation.

The testimony on behalf of claimant (which was not disputed) was, that he had been employed by Stratton to find a purchaser for the property; that he interested Mr. O'Donnell; that together they called upon Stratton; and that the result of the interview was the option agreement mentioned. The court instructed the jury that if they found from the evidence that at the time the option contract was entered into between Stratton and Finnerty, the latter's sole relation to Stratton was that of purchaser, or optionee, he could not recover. From this instruction and the ruling on the offer of the testimony referred to, the verdict could not be otherwise than in favor of the estate, for the reason that by the option Finnerty was named as optionee, and not being permitted to show that, with the consent of Stratton, he took the option to assign to O'Donnell, the testimony regarding his employment and securing a purchaser was of no avail.

Counsel for the estate contend that previous to the ruling under consideration, O'Donnell was permitted to state, over the objection of counsel for the estate, that Stratton stated he had employed Finnerty to secure a purchaser for the property, and hence, it is urged, the exclusion of the offered testimony was not prejudicial. We do not think there is any merit in this claim. The evidence received did not tend to prove that Finnerty was not the prospective purchaser; and besides, we think it clear the jury understood from the rulings that, by taking the option in his own name, Finnerty became the optionee, and that this contract terminated his relation to Stratton as a broker. If, then, it should appear from a further consideration of the record, that Stratton entered into a binding contract by virtue of the option to Finnerty, which he assigned to O'Donnell, or held for his benefit, and which the representatives of the estate wrongfully refused to carry out, it is evi-

dent that the ruling rejecting the evidence offered was preju-
dicial to claimant. This bring us to a consideration of the
questions argued by counsel for the estate, on the strength of
which they contend that claimant not only failed to make a
case, but, from the undisputed facts, cannot make one. These
propositions are,

(1) That the option contract and alleged assignment to
O'Donnell were never offered in evidence.

(2) The option contract was without consideration,
and, therefore, the death of Stratton before tender revoked the
contract by operation of law.

(3) The death of Stratton before the tender or con-
summation of the proposed purchase terminated the claimant's
authority to negotiate a sale.

(4) It does not appear the contract was ever assigned
to O'Donnell.

(5) The evidence fails to establish that O'Donnell ten-
dered the legal representatives of the estate of Stratton the
stipulated purchase price, or deposited it to their credit in the
Denver National Bank.

(6) That claimant was not entitled to compensation by
merely showing that he produced a prospective purchaser by
the terms of which the payment of the purchase price was con-
tingent.

We shall consider these propositions in the order men-
tioned:

1. The record discloses that the written instruments
considered were treated by both counsel and court as having
been introduced in evidence. In such circumstances neither
party will be heard to say, on review, that they were not, even
though the record fails to disclose a formal introduction. It
was upon the strength of these writings that counsel for the
estate objected to the oral testimony excluded. Obviously,
they must have been regarded as introduced in evidence, other-
wise there was no basis for the objection.

2.   The contract did not bind the optionee to purchase, but it purports to have been given for a good consideration; nor did the estate offer to show that it was given without consideration; neither does it appear that it was; and, therefore, during its life was binding upon Stratton, and hence, binding upon his estate until terminated by limitation.

3.   Claimant secured the prospective purchaser during the lifetime of Stratton, and his rights to compensation for these services under his contract of employment depend entirely upon whether or not O'Donnell took such steps as were required to entitle him to a specific performance; consequently, the death of Stratton in no manner effected claimant's rights.

4.   O'Donnell and Finnerty treated the contract as assigned to the former, or that it was taken and held by Finnerty for the use and benefit of O'Donnell, and we do not think, in such circumstances, that anybody else can raise a question about the validity of the arrangement whereby Finnerty transferred the option to O'Donnell.

5.   The rights acquired by O'Donnell, by virtue of the tender of the stipulated purchase price for the property to the Denver National Bank, were considered in *O'Donnell v. Chamberlain*, 36 Colo. 395, which case involved this identical contract.   It was there held that the tender was sufficient to entitle O'Donnell to a  specific performance of the contract.  The reasons for this conclusion are fully discussed in that case, and it is unnecessary to reconsider them here.

6.   It is true that claimant would not have been entitled to compensation for merely obtaining a prospective purchaser whose payment of the purchase price was optional on his part, but that is not the basis of plaintiff's claim.  He secured the purchaser, who subsequently offered to carry out the contract in such manner as imposed upon the estate the obligation assumed by Stratton, and, therefore, became entitled to his commissions by reason of this fact.

On behalf of claimant it was contended at the trial that his compensation should be fixed by what the services rendered

were worth in the city of Denver. Evidence to establish the customary compensation for such services in Denver was offered on behalf of claimant, and refused. Error is assigned on this ruling. We do not deem it necessary to determine the question thus raised. The record is silent as to where the contract of employment was entered into, and where the services for which compensation is claimed, were rendered. In the absence of the record definitely showing these matters, which might become material to the question raised by the assignment of error under consideration, we think no opinion should be expressed on that question.

The judgment of the district court is reversed and cause remanded for a new trial.          *Reversed and Remanded.*

Decision *en banc.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE MUSSER not participating.