## No. 12,044.

### CREEK *v.* LEBO INVESTMENT COMPANY.

Decided March 18, 1929.   Rehearing denied April 8, 1929.

357

358

Messrs. MORRISSEY, MAHONEY & SCOFIELD, Mr. HAROLD G. KING, for plaintiff in error.

Mr. PAUL F. IREY, Mr. JOHN T. BOTTOM, for defendant in error.

*Department Two.*

MR. JUSTICE BUTLER delivered the opinion of the court.

THE Lebo Investment Company obtained a judgment against Lavina Creek for rent due under a lease. Mrs. Creek complains of the court's action in rejecting evidence offered by her in support of her counterclaim for damages.

C. H. Taylor was in possession of the Columbia hotel in Denver, under a lease from The Lebo Investment Company. He owned the furniture and was conducting the hotel business. During the latter part of September or the first of October, 1925, he sold the furniture and assigned the lease to Mrs. Creek, who assumed the lessee's obligations under the lease, and thereupon went into possession. On October 31, 1925, a new lease was executed by the company, as owner, and Mrs. Creek, as lessee. The amount of rent due under the lease is not in dispute. The controversy is over the counterclaim.

1. At the trial Mrs. Creek offered evidence to the effect that during the week after the signing of the lease she called to the attention of the president of the company the dirty condition of the air shafts used to ventilate

many of the rooms, that he promised to have them cleaned, and that he and the company failed to keep the promise. Objection to this offer was sustained, and properly so. Rule 8 of the rules and regulations, printed on the back of the lease and referred to in the lease as binding upon the lessee, provides that the tenant shall keep the premises in a good state of cleanliness. The president's promise, made about a week after the execution of the lease, was without any consideration; hence it did not constitute a contract imposing upon the company a duty that, by the terms of the lease, was assumed by the lessee. Had there been a consideration for the promise, the result would be different.

2. Even without rule 8, such evidence would be inadmissible. In the absence of an agreement to do so, a lessor is under no obligation to clean air shafts, and in the present case no such agreement is shown.

3. Before buying the furniture and lease from Taylor, Mrs. Creek, accompanied by Taylor, called upon the president of the company and had a conversation with reference to the contemplated deal. Mrs. Creek offered to prove, by her own testimony and by the testimony of other witnesses, that she and the president of the company discussed the taking over of the Taylor lease; that she stated to the president that she would not take over the lease, or assume any responsibility thereon, or go into possession of the Columbia hotel, unless the company agreed to install at once a boiler for heating purposes, and that thereupon he informed Mrs. Creek that if she would assume the lease and go into possession of the hotel the company would install at once, at its own expense, a boiler for heating purposes; and that it was upon this condition that the Taylor lease was taken over and assumed by her. She also offered to prove that about the latter part of October, 1925, and before she would sign the lease, she required the company to agree to install a boiler to provide for the heating of the hotel;

that the company, through its president, stated that it would install a boiler at its own expense, at once, provided she would sign the lease; that it was upon this condition that the lease in question was signed by her; that had it not been for such statement by the president of the company, she would not have signed any lease; that she informed the company that unless and until it would agree to put in the boiler for heating purposes no lease would be signed. She also offered to prove that the company failed to install a boiler. These offers of proof were rejected by the court, as was also an offer of evidence concerning damages sustained by reason of the company's failure to install the boiler.

To sustain the rulings of the court, counsel for the company invoke the principle that extrinsic evidence is not admissible to contradict, add to, or vary the terms of a written instrument. The rule, of course, is well-established; but it is not always easy to determine when the rule should be applied. Wigmore, in section 2430 of his work on Evidence, says:

"The inquiry is whether the writing was intended to cover a certain subject of negotiation; for if it was not, then the writing does not embody the transaction on that subject. * * * Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties thereto. * * * This intent must be sought * * * in the conduct and language of the parties and the surrounding circumstances. * * * The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. * * * In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the

transaction on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation.''

In *International Harvester Co. v. Edwards*, 76 Colo. 531, 233 Pac. 164, we held that testimony that the sale of a trucking job was part of the contract for the sale of a truck was not inadmissible as varying the terms of a written contract.

In *Finnerty v. Stratton's Estate*, 53 Colo. 17, 123 Pac. 667, a broker, suing for a commission, was held entitled to show that an option to purchase, taken by him and assigned by him to another person, was taken with the understanding that the assignee, and not the broker, was the purchaser, and that the assignment was made in pursuance of an arrangement with his client that it should be so assigned.

In *De St. Aubin v. Marshall Field and Co.*, 27 Colo. 414, 62 Pac. 199, we held that where by an oral agreement two separate stocks of goods were transferred, and afterwards there was made and delivered a bill of sale that included one of the stocks, parol evidence was admissible to show that it included both stocks.

In *Mosier v. Kershow*, 16 Colo. App. 453, 66 Pac. 449, the defendant executed his promissory note and gave a deed of trust to secure the same. He sold the property, the purchaser assuming the indebtedness. After the debt became due the holder of the note, by written agreement with the purchaser, extended the time of payment. The defendant also signed the agreement. It provided that the defendant ''hereby consents to said extension, and such extension shall not in any way discharge or impair his liability as maker of said promissory note.'' In a suit against the defendant for the unsatisfied balance of the note, after foreclosure, the defendant alleged that contemporaneously with the extension agreement there was a parol agreement between the plaintiff and the defendant to the effect that in case of default in the pay-

ment of the note by the purchaser of the property, or in case the plaintiff elected to foreclose, the defendant should have notice so as to protect himself; that he signed the extension agreement upon the condition of such parol agreement; and that the deed of trust was foreclosed without his knowledge and without any notice being given to him. The court held that such parol agreement was a separate, independent promise, and was admissible in evidence to show the condition upon which the defendant signed the extension agreement.

In *Graffam v. Pierce*, 143 Mass. 386, 9 N. E. 819, A agreed to convey a house to B, and B agreed to lease a hall to A. During the same conversation B orally promised to put a hard pine floor in the hall when A should request it, and A orally promised to put a cement cellar in the house. Subsequently the deed of the house and the lease of the hall were executed and delivered. In them there was no provision with reference to putting in a hard pine floor. The court held that the oral agreement with reference to putting in the pine floor related to a subject distinct from anything contained in the lease, and that evidence of such oral agreement was admissible. And see *Webber v. Loranger*, 79 N. H. 3, 103 Atl. 1050, 25 A. L. R. 773; *Williams v. Salmond*, 79 S. C. 459, 61 S. E. 79; *Davies v. Hotchkiss* (Supreme Court, Appellate Term), 112 N. Y. Supp. 233; *Bunn v. Wall*, 180 N. C. 662, 104 S. E. 470.

There are cases holding otherwise, for, although the courts agree on the principle, they are not always in accord when it comes to considering the application of the principle to the facts.

Some subjects are expressly dealt with in a lease, and some are of such a character that if there was any agreement with reference thereto it certainly would be expressed in the lease. In such cases evidence of prior or contemporaneous negotiations with reference thereto would be inadmissible, it being conclusively presumed

that the parties intended to express in writing their final agreement. There are other subjects that the parties may, and frequently do, deal with by oral agreement, or may, and sometimes do, cover by provisions in a written lease. The things that ordinarily are required to be done by a lessor and a lessee after the tenancy has commenced are naturally, and usually, provided for in the written lease. But there are other matters that may be, and that not infrequently are, provided for by oral agreement rather than in a written lease; such, for example, as those that relate to placing the premises in condition fit for leasing, in preparation for leasing, and as an inducement to a prospective tenant to take a lease of the premises. Such matters need not be provided for in the written lease, even though the oral agreement has not been performed, or fully performed, at the time the lease is executed. Such an oral agreement does not contradict, add to, or vary the terms of the written lease, but is an independent agreement, capable of enforcement. Such is the present case. The court erred in excluding the offered evidence concerning the oral agreement discussed in this paragraph of the opinion.

The judgment is reversed, and the cause is remanded for a new trial.

MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE MOORE and MR. JUSTICE BURKE concur.