No. 12,510.

Martin *v.* Grant.

(8 P. [2d] 764)

Decided February 23, 1932.

Mr. JOHN A. MARTIN, for plaintiff in error.

Mr. L. E. LANGDON, for defendant in error.

*In Department.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

IN April, 1929, plaintiff Grant, owner of farm lands in Pueblo county, gave to the defendant Martin a lease thereof at an annual rental of $1,300, payable in three equal instalments. For a failure of the lessee to pay the instalment of rent due in August of that year, and after demand upon the defendant for such payment, or possession of the premises, and his refusal either to pay, or surrender, plaintiff brought this action to recover possession of the premises and for the past due rent.

In defendant's answer he admits failure to pay the rent past due, but says forfeiture of right of possession does not follow such failure. The answer alleges that this land is a dry farm and to produce crops, water must be spread upon it. There are no decreed water rights belonging to it and water must be pumped upon it from the soil itself or rented or procured from an owner of a water right for irrigation who is able to supply it. These conditions, the answer proceeds to state, existed and were known by both parties at the time the lease was executed. The answer further alleges that the defendant took possession of the farm shortly before the first of

February, 1929. Theretofore the plaintiff had represented to him that there was no rental water available for irrigating the land and that a pumping plant on the premises, which is mentioned in the lease, was in serviceable condition and capable of producing sufficient water for the irrigation of crops, which representation was believed by the defendant to be true and relied upon by him; that the pumping plant proved to be defective and was not in serviceable condition, and although both plaintiff and defendant tried to put the same into workable condition, they were unsuccessful, and not until the latter part of June was that result accomplished, and at that time the defendant took the pumping plant to a mechanic in Pueblo who at once repaired it and made it capable of pumping water for irrigation of crops. It was then, however, the answer says, too late to revive the planted crops which had suffered damage for lack of water with which to irrigate the land.

The written instrument of leasing, which is attached as an exhibit to the complaint and made a part thereof, in clause 9 reads: "It is further mutually agreed between the parties hereto that the lessee shall at all times during the demised term have the right to use the pumping plant now on the demised premises, but said lessee shall pay for all power or electricity used in operating said pumping plant. It being understood that lessee shall rent or pump water sufficient to irrigate all tillable land on the demised premises."

The plaintiff filed a motion for judgment on the pleadings which consisted of the complaint and answer, which, so far as concerns this motion, are sufficiently above summarized. The question for decision here is whether the answer constitutes a good defense. The trial court held that it did not, and that the alleged defenses of the answer are contrary and repugnant to the provisions of the written lease which, among other things, contains the covenant hereinabove set forth that the defendant will rent or pump water. The defendant cannot now be heard

to say that the plaintiff told him there was no water for rent, or that plaintiff represented to him that the pump was in condition to operate, since the lease is silent as to such conditions and no fraud or misrepresentation of facts is charged against the plaintiff in the answer.

The defendant frankly admits in his printed brief that the general rule of law, applicable to the case as made by the complaint and answer, is against him, but asserts that it is within an exception to the general rule. He relies for a reversal upon two general grounds or propositions thus stated:

"1. That where, as in this case, premises are demised for a specified purpose, there is an implied warranty of fitness for the use; and a parol warranty or representation of fitness is not in contradiction of a lease which is silent on the subject.

"2. That the subsequent promises and acts of the plaintiff to put the pumping plant in serviceable condition are admissible as an interpretation of the contract by the parties and of recognition by the plaintiff of his duty and obligation with respect to the condition of the pumping plant in the first instance."

■ To the first proposition defendant cites 36 C. J., p. 44, sec. 659: "An affirmation made upon the renting of property as to its condition may amount to a warranty, as where it is stated to be of a certain character. When a landlord rents the premises with the distinct understanding that they are in good condition, that becomes a part of the consideration." This citation is supposed to bear upon, but it is inapplicable to, the alleged oral representations by the plaintiff as to the condition of the pump on the premises that was to be used in the pumping of water. First, we say that there is nothing in the defendant's answer or elsewhere in this record that presents any such case as falls within the scope of the language above quoted. But, aside from this and for even a better reason for holding this proposition no defense to this action, the written lease deals with this

very subject or element now in dispute and its language is clearly to the contrary. The defendant specifically covenants and agrees to pump or rent water sufficient to irrigate all the tillable land. The plaintiff gives to the defendant the right to use the pumping plant then on the premises. The written lease having thus specifically dealt with the subject of irrigating the land and the use of the pump, and the defendant having expressly covenanted either to rent or pump water, he may not now be heard to complain, as he does, that the plaintiff impliedly represented the fitness of the pump.

In *Creek v. Lebo Inv. Co.*, 85 Colo. 357, 276 Pac. 329, there is an elaborate discussion of the very matter here involved. At page 360 of the opinion we said, quoting from Wigmore on Evidence: "Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties thereto. * * * In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing. If it is mentioned, covered, or dealt with in the writing, then presumably the writing was meant to represent all of the transaction on that element."

The element of the pumping plant and the subject of the duty and covenant by the lessee, either to pump or rent water, are specifically dealt with in the clause 9 of this written lease and the defendant may not in this action be heard to say that the pump was not in serviceable condition. At page 363 of the Creek opinion, we further said what is peculiarly applicable here: "The things that ordinarily are required to be done by a lessor and a lessee after the tenancy has commenced are naturally, and usually, provided for in the written lease."

At page 362 we said: "Some subjects are expressly dealt with in a lease, and some are of such a character that if there was any agreement with reference thereto it certainly would be expressed in the lease. In

such cases evidence of prior or contemporaneous negotiations with reference thereto would be inadmissible, it being conclusively presumed that the parties intended to express in writing their final agreement." The general rule being as above stated and, as the defendant admits, being against him, the case as made by the pleadings is within that rule.

The doctrine applicable to this case is well stated in 36 C. J., p. 45, §660, in the following language: "There is, as a general rule, no implied covenant upon the part of the landlord that the demised premises are fit for the purposes for which they are rented or for the particular use for which they are intended by the tenant." The author cites in support of the statement: *Colorado Mtg. etc., Co. v. Giacomini,* 55 Colo. 540, 136 Pac. 1039; *Davidson v. Fischer,* 11 Colo. 583, 19 Pac. 652; and *Thum v. Rhodes,* 12 Colo. App. 245, 55 Pac. 264.

As we read the cases relied upon by the defendant, the only one which is in his favor is *Hines v. Willcox,* 96 Tenn. 148, 33 S. W. 914. This case is not only contrary to our own decisions above cited, but has been criticized and rejected as authority in the following, among other cases: *Franklin v. Tracy,* 117 Ky. 267, 77 S. W. 1113, 1115; *Whitmore v. Orono P. & P. Co.,* 91 Me. 297, 39 Atl. 1032, 1036; *O'Malley v. Twenty-Five Associates,* 178 Mass. 555, 60 N. E. 387, 388; *Kutchera v. Graft,* 191 Iowa 1200, 184 N. W. 297, 301; *Fraser v. Kruger* (8th Circuit C. C. A.), 298 Fed. 693, 697. Our Circuit Court of Appeals in the Fraser case, supra, characterized the doctrine of Hines v. Willcox as manifestly unsound. In the Massachusetts case Mr. Justice Holmes, in the course of his opinion, said that "The views expressed in *Hines v. Willcox* * * * do not command our assent." In the Iowa case, supra, it was said: The Hines case "seems to stand quite alone" and is "contrary to the weight of authority."

Defendant's second proposition, that the plaintiff's subsequent promises and acts to put the pumping

plant in serviceable condition constitutes an interpretation of the contract and lease such as is attributed to it by the defendant, is without merit. The pumping plant was discovered to be not serviceable soon after the written lease was executed. The power to operate this plant was electricity and after the irrigation season was over the appliances used for carrying the electricity to the plant were removed and neither the plaintiff nor the defendant was aware that the plant at the time was not in serviceable condition or that, when electric power was applied, it would not function. Soon after the lease was executed, and during the month of March or April, the defendant discovered that there was some defect in the plant that prevented its successful operation, and when he informed the plaintiff thereof, both of them tried to remedy the defect, or to put the plant in fit condition, but they did not succeed. This action upon the part of plaintiff in assisting the defendant does not necessarily, and in this case it does not, indicate or prove that the plaintiff had in effect given a warranty to the defendant with respect thereto. The lease itself does not so read. It merely purports to give to the defendant the right to use the plant at all times during his tenancy. Plaintiff's action in assisting the defendant is what a landlord would be likely to do who desires his tenant to succeed in the enterprise. However that may be, even if the plaintiff misrepresented the pumping plant as serviceable, the defendant may not now be heard to complain on the ground of its unfitness for immediate use. He may not sit idly by, as he did in this case, for about two months, knowing that his planted crops needed moisture, and do nothing at all to make the pumping plant suitable or fit for accomplishing the result for which it was designed. In June, however, he did what ordinary prudence required him to do in April. At that later date he, himself, took the pump to a mechanic in Pueblo who at once restored it to a proper condition and it thereafter functioned to his satisfaction. If, however, the plaintiff's con-

duct in April in assisting the defendant, at the latter's request, to make the pump serviceable, constitutes a recognition by the plaintiff that he had warranted it to be in good working order, it is equally true that the defendant's subsequent action in June in taking the plant to Pueblo for repairs by a skilled mechanic, is a tacit acknowledgment by him that he was merely doing his duty in the premises, which he should have performed promptly in the month of April, and if he had then acted promptly he would have been able to irrigate his land in time to save his crops.

In *Mack v. Jackson,* 9 Colo. 536, 13 Pac. 542, we said: "It is a rule that one cannot recover for an injury which he might by reasonable precautions or exertions have avoided." In *Roberts v. Lehl,* 27 Colo. App. 351 (149 Pac. 851), at page 359, it is said that a person injured by the fault of another must use all reasonable means to protect himself against injurious consequences.

Applying this doctrine it is clear that when the defendant in the month of April discovered that the pumping plant would not function, and that he himself was unable to make it do so, he should have promptly used reasonable efforts to have it put in good order by a competent mechanic. His neglect until the following June, unexplained, to have the plant put in workable condition disentitles him to the relief which he seeks in this action.

The judgment was right and it must be affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE ALTER and MR. JUSTICE HILLIARD concur.