No. 19,510.

Íra Scott, et al., *v.* Homer G. Huntzinger.
(365 P. [2d] 692)

Decided October 23, 1961.

Messrs. Knowles & Shaw, Mr. Jerry L. Smith, for plaintiffs in error.

Messrs. Fugate, May, Mitchem & McGinley, Mr. Daniel S. Hoffman, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

UPON trial to the court Huntzinger, as plaintiff, obtained a joint and several judgment for $5,000 against Ira Scott, R. G. Scott and David I. Sheppard, individually and as a partnership doing business as Scott, Scott and Sheppard and John J. Sullivan, all of whom will hereafter be collectively referred to as the defendants. By the present writ of error defendants seek reversal of this judgment.

Huntzinger's action sounds in contract and in his complaint he avers that he and the defendants "entered into an agreement * * * which provided * * * that if the plaintiff * * * would procure one Ted White, as an optionee to purchase the above described oil and gas lease [then owned by the defendants], and the said Ted White would exercise the option substantially in accordance with the terms of a letter from Ted White to the defendants * * * dated April 22, 1955, and accepted by the defendants * * * April 27, 1955, * * * THEN the defendants * * * would pay to plaintiff" a sum of money and "That this agreement between the defendants and * * * the plaintiff is evidenced by a memorandum," namely a letter prepared and signed by the defendants, and each of them, on April 27, 1955, and accepted on that same date in writing by plaintiff.

Accordingly, the right of Huntzinger to recover, and the obligation of the defendants to pay a commission, must be found within the four corners of this so-called letter agreement, signed by all the parties on April 27, 1955.

This letter agreement reads as follows:

"SCOTT, SCOTT & SHEPPARD
OIL PROPERTIES
1706 Welton Street
Denver 2, Colorado

"April 27, 1955

Mr. Homer G. Huntzinger
2200 Poplar Street
Denver, Colorado

Dear Mr. Huntzinger:

"We have entered into an agreement with Ted White dated April 22, 1955, affecting U.S. Oil and Gas Lease No. SF 065557 covering lands in San Juan County, New Mexico. We have made a separate Agreement with Oil Ventures, Inc. relating to the deal. A copy of each agreement is attached for reference.

"If the deal with White results in our sale of the property as provided in the Agreement with him, then we will pay to you as a commission an amount of money determined as follows:

"The proceeds from the working interest (3.25% of gross) in the above property for the period September 15, 1954, through December 31, 1954, less applicable taxes, and less bank charges for that period resulting from the loan affecting the property; provided, however, that in no event shall the amount to be paid exceed $5,000.00.'

"If this letter properly constitutes our understanding in this connection, please execute a copy for our files.

Yours very truly,

/s/ Ira Scott          /s/ David I. Sheppard
Ira Scott              David I. Sheppard

/s/ R. Q. Scott        /s/ John J. Sullivan
R. Q. Scott            John J. Sullivan

Agreed and accepted this 27th day of April 1955.

/s/ Homer G. Huntzinger
Homer G. Huntzinger"

Huntzinger and defendants admit the authenticity and proper execution of this letter agreement, and it is mutually agreed that the compensation called for by the agreement is $5,000, should it be determined that any commission is due and owing Huntzinger.

The defendants resist the demand of Huntzinger on the grounds that their obligation to pay is *conditional;* that the condition precedent did *not* occur; and that therefore they are *not* obligated to pay. In support of this general proposition they specifically urge that the letter agreement itself in just so many words provides that *"if the deal with White results in our sale of the property as provided in the Agreement with him, then we will pay to you as a commission an amount of money to be determined as follows * * * "* (Emphasis supplied.) Since the "deal with White" did *not* result in the sale of the property "as provided in the Agreement with him," defendants argue that they are under no legal obligation to pay a commission.

The material facts are not essentially in dispute. The controversy flares from a sharp disagreement as to the legal effect of undisputed facts.

Upon trial it was established that the defendants owned an interest in an oil and gas lease of lands situate in New Mexico which they desired to sell. They sought the assistance of Huntzinger, who thereafter admittedly introduced the defendants to one Ted White. The negotiations between defendants and Ted White did not culminate in an outright sale of the leasehold interest, rather on or about April 22, 1955, White entered into an agreement with the defendants whereby he acquired an option to buy this leasehold interest. A few days later, on April 27, 1955, defendants and Huntzinger signed the letter agreement set forth above in its entirety.

White's option with the defendants provided, inter alia, that if he paid to the defendants the sum of $15,000 within thirty days after commencement of the drilling of the first well, then the option could be fully exer-

cised by the additional payment of $170,000 on or before October 1, 1955. Accordingly, the total purchase price was to be $185,000 and the option by its own terms expired at the very latest on October 1, 1955. It was undisputed that prior to October 1, 1955, White did not exercise his option to buy and actually paid no money to the defendants under his option.

A short time thereafter defendants and White, who was then acting not only for himself but also for other interested parties, resumed negotiations which culminated in a purchase and sale agreement, executed on or about November 11, 1955. This purchase and sale agreement admittedly pertained to the same leasehold interest which was the subject of the option agreement of April 22, 1955. By the agreement of November 11, 1955, White and others agreed to purchase the defendants' leasehold interest for a total price of $160,000, of which $25,000 was to be paid immediately and the balance of $135,000 to be paid not later than eighteen months thereafter.

Huntzinger admitted that he had received written notice from the defendants that White had failed to exercise his option, and it is agreed that Huntzinger did not participate in the subsequent negotiations resulting in the purchase and sale agreement signed by the parties on November 11, 1955. In fact, he testified, he knew nothing of this transaction till long after it had been concluded. Upon learning that the defendants had in fact sold their leasehold interest to Ted White and others, he then made claim for his commission.

■ The present action is based on an express contract, not on quantum meruit. See *Millage v. Irwin,* 68 Colo. 188, 187 Pac. 525. Such being the case, though perhaps it be a truism, it is nonetheless still quite proper and correct to observe at the outset that the right of a broker to recover a commission depends upon the particular terms of the broker's employment. See *McGill v Fleming,* 32 Cal. App. (2d) 601, 90 P. (2d) 341.

■ Applying this basic rule to the facts of the instant case, Huntzinger's right to receive a commission depends upon his contract of employment with the defendants. As has been noted above, his contract provided that *if* the defendants sold their leasehold interest to White "as provided in the Agreement with him," then and only then would he be entitled to a commission. Inasmuch as White did not exercise his option to buy, Huntzinger has accordingly failed to bring himself within the terms of his employment contract and under such circumstance he may not recover judgment from these defendants.

In its rather brief findings the trial court did *not* find that this condition precedent had been fulfilled, which, of course, it had not. Additionally, the trial court found that the subsequent purchase and sale agreement of November 11, 1955, between defendants and Ted White was "materially" different from the earlier option agreement of April 22, 1955. Nevertheless, the trial court still entered judgment for Huntzinger with the comment that Huntzinger was being unfairly "cut out" of a commission. It should be noted that there is no evidence that defendants and White were guilty of bad faith, or conspired to let the option lapse with the intent of depriving Huntzinger of his commission, and then consummating the sale at a later date. Huntzinger neither alleged nor proved any such facts. It follows that there is no evidence to support this conclusion of the trial court.

In *Gray v. Blake,* 128 Colo. 381, 262 P. (2d) 741, it was said:

" * * * it is the general rule that a broker employed to find a purchaser for, or to sell, property is not entitled to compensation where he merely procures a third person to take an option on the property and the option is not exercised. Even though a broker might not be entitled to compensation for merely procuring a prospective purchaser to take an option to purchase, *his right to compensation accrues when the optionee subsequently*

*exercises the option or is willing to exercise it, but is prevented from doing so by some act or omission on the part of the owner to comply with his part of the agreement."* (Emphasis supplied.)

See, also, *Finnerty v. Stratton's Estate,* 53 Colo. 17, 123 Pac. 667.

██ The fact that after an option has expired the owner and the optionee in fact conclude a sale of the subject property, does not of itself entitle the broker to a commission, particularly where the broker's contract of employment expressly provides that his right to a commission is dependent upon the optionee purchasing the property in accord with the terms of the option agreement. See 12 C.J.S. Brokers, §86, p. 199, where it is stated:

*"Option.* Where a broker employed to effect a transaction secures merely a contract from a customer by which the latter becomes entitled to enter into the transaction at his option and he does not elect to enter into the transaction, the broker is not entitled to a commission. Thus a broker employed to sell property or find a purchaser therefor is not entitled to compensation for procuring a customer who takes, but does not exercise an option to purchase the property, as where the customer enters into a contract by the terms of which he may at his option either accept the property or forfeit the earnest money or such partial payments as he may have made up to the time of his election and he does not elect to take the property. *This rule applies even though the property is purchased, where it is purchased otherwise than under, or by exercising, the option, as where it is purchased by a third person, or from a subsequent owner, or from the same owner or his legal representatives by the same person, but after the expiration of the option or under a new agreement."*

In *Schofield v. Zinn,* 192 Ill. App. 456, it was held that:

"Where a commission agreement is referable to an option contract of a certain date, in the absence of any

evidence tending to show a want of good faith on the part of the vendor and vendee of such option contract in failing to consummate the same, for the purpose of depriving the broker procuring such contract of his commissions, *the latter cannot predicate a right to recover commissions under such commission agreement merely upon the ground that at some subsequent time the same parties actually entered into and consummated a contract for the purchase and sale of a portion of the same shares of stock mentioned in such option contract."* (Emphasis supplied.)

See also, *Miller v. Hays,* 71 Pa. Super Ct. 523, wherein it was stated:

" * * * a real estate broker who had effected a lease of a certain property, with an option on the part of the lessee to purchase, is not entitled to commissions for sale of the property *if the purchase is never consummated under the terms of the option.* It is not material that the lessee afterwards purchases the property from the executor of the deceased lessor for the same price as that provided under the terms of the lease *if the final sale was the result of the new agreement and not the exercise of the original option."* (Emphasis supplied.)

The judgment is reversed and the cause remanded with directions to dismiss the action.

Mr. Chief Justice Hall and Mr. Justice Day concur.