## No. C-1297

**Colorado City Development Company, a Colorado corporation v. Jones-Healy Realty, Inc., a Colorado corporation**

(576 P.2d 160)

Decided March 13, 1978.                    Rehearing denied April 10, 1978.

Ireland, Stapleton, Pryor & Holmes, Hardin Holmes, Kenneth L. Starr, for petitioner.

Meer, Wolf & Slatkin, Albert B. Wolf, Walter Slatkin, Irvin M. Kent, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

We granted certiorari to review *Jones-Healy Realty, Inc. v. Colorado City Development Co.*, 39 Colo. App. 329, 568 P.2d 88 (1977). We reverse.

Colorado City Development Company (CCDC), petitioner, is a wholly-owned subsidiary of Great Western United Corp. (GWU). In February of 1973, GWU contemplated selling the 11,000-acre ranch (the 3-R Ranch) which CCDC owned. GWU's personnel advised Jones-Healy Realty, Inc. (Jones-Healy), respondent, that it would entertain offers to purchase the 3-R Ranch at $220 per acre cash and would pay a 10% brokerage commission. If a listing existed, the listing was oral, open, and non-exclusive. CCDC's offering brochure, which described the 3-R Ranch and set forth that a former employee held a right of first refusal on the property, was given to Jones-Healy and a number of other real estate brokers.

Jones-Healy contacted the Colorado City Water and Sanitation District (District) as a potential purchaser. Negotiations involving Jones-Healy, the District, and CCDC culminated in the District's offer to purchase the ranch for $220 an acre on May 22, 1973. The District's offer, however, also contained additions to and variations from the terms of the listing agreement. The listing agreement dealt only with the sale of real property at a per-acre price, subject to the right of first refusal. The offer, however, (1) provided that CCDC's equipment, livestock, and crops on the

3-R Ranch were to be included in the purchase price, (2) required CCDC to provide a survey and either an abstract of title or title insurance, and (3) was submitted in the form of a specific performance contract. Nonetheless, CCDC notified the holder of the right of first refusal that it intended to sell the 3-R Ranch upon the terms and conditions contained in the District's offer. The holder of the right of first refusal was also advised that he had ninety days to exercise his right.

On June 21, 1973, the combined board of directors of GWU's wholly-owned subsidiaries voted to accept the District's offer, subject to approval by an *ad hoc* committee composed of GWU's directors. The GWU committee, however, refused to accept the offer, and CCDC formally rejected the District's offer in a letter dated August 16, 1973. Although no reason for the rejection was expressed in the letter, the trial court found that CCDC's decision was based upon its conclusion that the 3-R Ranch was worth more than $220 an acre.

Jones-Healy thereafter demanded a commission, based upon the District's offer. CCDC denied liability, and Jones-Healy brought this action. Trial to the court resulted in a judgment in favor of CCDC. The court concluded, as a matter of law, that the District's offer contained substantial additions to and variations from the terms of the listing agreement which prevented the recovery of a commission. The court of appeals reversed on the ground that CCDC had rejected the District's offer because of the price and for reasons unrelated to the asserted variations. Whether the variations were substantial was held to be irrelevant because of CCDC's actual reason for rejecting the offer.

■ The right of a real estate broker to recover a commission is governed by section 12-61-201, C.R.S. 1973, which provides:

"*When entitled to commission.* No real estate agent or broker is entitled to a commission for finding a purchaser who is ready, willing, and able to complete the purchase of real estate *as proposed by the owner* until the same is consummated or defeated by the refusal or neglect of the owner to consummate the same as agreed upon." (Emphasis added.)

Reference must be made to the terms of each particular listing agreement in order to determine whether the broker's duties have been performed. *Scott v. Huntzinger*, 148 Colo. 225, 365 P.2d 692 (1961).

■ An offer to purchase real estate often differs from the terms of the listing agreement in some respect or adds terms regarding matters not addressed in the listing. Where the variations are minor, the seller is obligated to identify those on which it would rely if it chooses to reject the offer. Fairness requires that the broker be afforded the opportunity to correct minor variations so that the sale may be completed and a commission earned. However, when the variations are substantial, the seller is entitled to refuse the offer without specifying the reason for its rejection. The broker is charged with knowledge that the substantial variation exists

when he submits the offer. These principles were recognized in *Horton-Cavey Realty Co. v. Reese*, 34 Colo. App. 323, 527 P.2d 914 (1974), wherein it was declared:

"[W]here, as here, the variation between the offer and the listing is substantial, a seller is at liberty to reject the offer without explanation, and the broker may not use the failure to state specific objections as grounds for claiming a commission. . . ."

*See also Peter M. Chalik & Associates v. Hermes*, 56 Wis.2d 151, 201 N.W.2d 514 (1972); *Kleven v. Cities Service Oil Co.*, 22 Wis.2d 437, 126 N.W.2d 64 (1964).

■ The trial court correctly concluded that the District's offer contained substantial additions to and variations from the terms of the listing agreement. Acceptance of the offer would have resulted in a reduction of the net selling price and would have caused CCDC to incur incompatible legal obligations.

■ The court of appeals failed to recognize the primary reason for the substantial variation rule when it held that CCDC was unable to assert the substantial additions and variations as a defense to the broker's claim. Where an offer contains substantial additions to or variations from the terms of the listing agreement, the broker is not entitled to a commission, because he failed to perform according to the terms of his employment contract. Regardless of whether the seller is rejecting the offer because of the variations or simply because it has decided not to sell, the broker's duty to submit an offer which substantially meets the terms of the listing agreement remains unfulfilled.

The other issues raised on appeal do not warrant discussion.

Accordingly, the judgment of the court of appeals is reversed, and the cause is remanded to the court of appeals with directions to affirm the judgment of the trial court.

MR. JUSTICE KELLEY dissents.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE LEE do not participate.


MR. JUSTICE KELLEY dissenting:
I respectfully dissent. I would affirm the court of appeals.