McGILL CORPORATION, d/b/a The Real Estate Company, Plaintiff-Appellee and Cross-Appellant,

v.

Barbara S. WERNER, Defendant-Appellant and Cross-Appellee.

Nos. 79CA0019, 79CA0875.

Colorado Court of Appeals, Div. II.

June 11, 1981.

Graves & McGill, P.C., Scott McGill, Steamboat Springs, for plaintiff-appellee and cross-appellant.

Hibbard & King, William C. Hibbard, Steamboat Springs, for defendant-appellant and cross-appellee.

KIRSHBAUM, Judge.

Defendant, Barbara S. Werner, appeals the trial court's judgment awarding plaintiff, a real estate broker, a $9,000 commission pursuant to a real estate listing agreement. Defendant also appeals the court's denial of her counterclaim against the broker. We affirm.

This action involves a consolidation of two appeals stemming from an aborted real estate transaction for the sale of defendant's home in Steamboat Springs, Colorado.

The record reveals the following facts. On February 18, 1977, defendant and her ex-husband entered into an exclusive listing contract with plaintiff for the sale of their residence for $90,000 at a ten percent commission. The agreement expired on February 18, 1978, by its own terms. On January 31, 1978, plaintiff's agent, Douglas McGill, prepared a receipt and option contract for the purchase of the property for $90,000, payable in cash or certified funds on the date of closing. The offer expired by its own terms on February 10, 1978. The offerors, Samuel and Judy Taylor, deposited $500 earnest money with plaintiff.

The offer was submitted to defendant's ex-husband, who immediately accepted it. The offer was then delivered to defendant in person by McGill on February 1, 1978, in Steamboat Springs, Colorado. Defendant informed McGill that she wished to consider the offer further and took it with her to her Montana residence. She did not accept the offer by February 10. Instead, she mailed a counter-offer dated February 6, 1978, to plaintiff, which included provisions for a $9,000 earnest money payment, a reservation by defendant of the right to store her belongings on the property being purchased, and a real estate commission of seven percent.

Prior to receiving defendant's counter-offer, McGill wrote to defendant on February 10, 1978, informing her that after midnight

that date the Taylors would no longer be obligated to go through with the purchase, but that if she signed and returned all the requisite documents they "may honor the offer after the deadline." That letter also stated that regardless of whether she accepted the Taylors' offer, defendant would be obligated to pay plaintiff the ten percent commission. After he received defendant's counter-offer later that same day, McGill sent a second letter to defendant. That letter stated that the Taylors had made an offer on another house, contingent on their being unable to purchase plaintiff's house; that if "all the papers" were signed and returned to plaintiff by February 16, the Taylors would "go ahead with the purchase"; and that the Taylors probably would not agree to the new provisions contained in the counter-offer.

On February 11, 1978, the Taylors did submit an offer to purchase another residence listed by plaintiff, which offer was expressly contingent on their not being able to purchase defendant's property. On February 14, 1978, McGill sent a letter stating that the Taylors had rejected her February 6 counter-offer. On February 16, defendant executed the January 31 option contract which had already been accepted by her ex-husband and mailed that document to plaintiff; plaintiff received it on February 21, 1978. The Taylors purchased the other property, and plaintiff received a seven percent sales commission from that transaction. The Taylors did not purchase defendant's property.

Defendant first argues that the Taylors were not ready, willing, and able to purchase her home because they had not received a final commitment for financing the transaction. We disagree.

To be considered an "able" purchaser, one seeking to purchase real property need not have cash in hand equivalent to the entire purchase price at the time the offer is made. See *Winkelman v. Allen*, 214 Kan. 22, 519 P.2d 1377 (1974). Nor need the precise source of the offeror's anticipated funds for purchase be identified. *Liggett v. Allen*, 77 Colo. 116, 234 P. 1072 (1924).

Rather, the offeror must be shown to have had the financial ability to complete the purchase within the time permitted by the offer. *See Fender v. Brunken*, 534 P.2d 347 (Colo.App.1975) (not selected for official publication); § 12–61–201, C.R.S.1973 (1978 Repl. Vol. 5). *See also Shell Oil Co. v. Kapler*, 235 Minn. 292, 50 N.W.2d 707 (1951).

Here, the record indicates the Taylors did obtain a tentative loan commitment from a lending institution, conditioned on an appraisal of the property and a verification of the facts recited by the Taylors in their loan application, and that the Taylors had sufficient personal funds to be able to comply with the contract requirements once they received the loan proceeds. The evidence supports the trial court's conclusions that the Taylors were ready, willing, and able purchasers; hence, the conclusion will not be disturbed on appeal. *Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970).

Defendant also argues that there were material variations between the terms of the listing agreement and the Taylors' offer. We disagree. The trial court found that the differences between the Taylors' offer and the listing agreement constituted minor and immaterial variations. The record supports that conclusion; hence, it will not be disturbed on appeal. *Linley v. Hanson, supra.*

Where variations between the terms of a listing agreement and an offer to purchase real estate are immaterial, the seller is obligated to identify those which it would rely on as a basis for rejecting the offer. *Colorado City Development Co. v. Jones-Healy Realty, Inc.*, 195 Colo. 114, 576 P.2d 160 (1978). Here, defendant did not specify any variations as a basis for rejecting the Taylors' offer. She simply submitted a counter-offer, which itself contained the terms she now asserts constituted material variations from the listing agreement.

Defendant's contention that plaintiff's two letters of February 10, 1978, constituted a second purchase offer by the Taylors is moot. The record demonstrates that de-

fendant never signed the settlement statement and failed to return the documents to plaintiff by February 16, 1978. Even if we assume that the letters might be deemed new offers, defendant did not comply with their express requirements for acceptance.

 Defendant also argues that plaintiff breached its fiduciary duty to defendant because, prior to the expiration of the listing agreement, McGill contacted an attorney and informed defendant of his intention to commence suit; because plaintiff returned the Taylors' earnest money without defendant's authorization and did not attempt to sell defendant's property after February 16, 1978; and because plaintiff arranged the sale of another of its listed properties to the Taylors. We disagree.

We find no authority, and defendant cites none, to support the novel proposition that a real estate broker breaches a fiduciary duty when, following a listing property owner's unjustified rejection of a bona fide purchase offer, the broker seeks legal advice concerning its rights to a commission. Defendant had no interest in the Taylors' earnest money after her refusal of their offer and plaintiff properly informed defendant of the Taylors' conditional offer to purchase the other property. *See Olson v. Brickles*, 203 Va. 447, 124 S.E.2d 895 (1962). Having initially breached the listing agreement, defendant cannot now maintain that plaintiff was obligated to seek purchasers for the short time remaining on the contract. The record supports the trial court's conclusions that plaintiff did not breach any fiduciary duty to defendant; we may not disturb such findings on appeal. *Linley v. Hanson, supra.*

Defendant's contention that the damages awarded to plaintiff were excessive and plaintiff's contention on cross-appeal that it is entitled to attorney fees are without merit.

Because we have resolved the issues in case No. 79CA0875 in favor of the broker, we need not consider defendant's claim in case No. 79CA0019 that the trial court erroneously issued a writ of attachment against defendant's home for the amount of the commission allegedly owed pending trial on plaintiff's cause requesting a judgment for that sum.

Judgments affirmed.

BERMAN and KELLY, JJ., concur.