**Wayne E. HARDING, Jr., d/b/a Wayne Harding Associates, and Adolf Farland, d/b/a Farland Realty, Plaintiffs-Appellees,**

v.

**Edward R. LUCERO, an individual, and 2000 Arapahoe Street Properties, Inc., a Colorado corporation, Defendants-Appellants.**

No. 84CA0589.

Colorado Court of Appeals, Div. I.

May 29, 1986.

Guy M. Heyl, P.C., Guy M. Heyl, Denver, for plaintiffs-appellees.

Joe Clarence Medina, Denver, for defendants-appellants.

STERNBERG, Judge.

This was an action, brought by plaintiffs, Wayne E. Harding, Jr., d/b/a Wayne Harding Associates (Harding) and Adolph Farland, d/b/a Farland Realty (Farland), to recover brokers' commissions alleged to be due them from defendants, 2000 Arapahoe Street Properties, Inc., and Edward R. Lucero, president of 2000 Arapahoe. Lucero and 2000 Arapahoe appeal from judgment rendered for plaintiffs. We affirm.

This case involves a complicated series of negotiations and sales transactions which culminated in the purchase of an office building by Phillip E. and Rita H. Edler (Edlers) from 2000 Arapahoe. The facts as found by the trial court are as follows.

In the fall of 1980, Farland contacted Lucero seeking to participate in the sale of the building. Lucero promised Farland that if Farland provided a ready, willing, and able buyer for the property, at satisfactory terms including a price of about $2,500,000, Lucero would pay a seven percent commission to Farland. Farland contacted Harding and, together, they produced the Edlers as prospective buyers.

On January 6, 1981, Lucero, acting without disclosure of any possible corporate principal, agreed to extend an option on the property to Harding and the Edlers. This agreement contemplated a seven percent commission to be split among Harding, Farland, and Rita Edler, who is also a real estate broker. As partial consideration for the option, Harding agreed to guarantee a $100,000 loan to Lucero. The loan proceeds went to Lucero personally and in his individual capacity. Because Harding withdrew as purchaser, however, the option was not exercised and the transaction was renegotiated.

Plaintiffs, the Edlers, and Lucero, acting for 2000 Arapahoe, finalized new agreements between March 24 and March 27, 1981. A "Real Estate Commission Contract" provided that a $100,000 broker's commission was to be split among Farland ($40,000), Harding ($20,000), and Bonanza Realty, Rita Edler's company ($40,000). The effect of the sales agreement between

2000 Arapahoe and the Edlers was that the Edlers were to become sole purchasers of 100 percent of the property. This contract further stated that 2000 Arapahoe's obligation to pay commissions was contingent upon the closing of "contracts for purchase, in total, of a 100 percent interest in the foregoing property" by the contemplated buyers. However, this contract was contingent upon the Edlers' ability to procure financing for the transaction; when the financing failed to materialize, the transaction was again renegotiated.

The Edlers and 2000 Arapahoe, again acting through Lucero, reached another understanding in May 1981. The Edlers were to purchase 50 percent of the property; the purchase price was to include $30,000, one-half of the commissions specified in the March agreements, that was agreed to be due to plaintiffs; the price was reduced by $20,000 in lieu of the commission due Rita Edler through Bonanza Realty; 2000 Arapahoe sold a 50 percent interest to a limited partnership controlled by Lucero; and the Edlers and the limited partnership agreed that each would retain its interest in the property for at least two years but that, after two years, each would possess limited rights to acquire the other's interest. All of these negotiations occurred, and the agreements were executed, without plaintiffs' knowledge or consent.

About four months later, Lucero, acting for the limited partnership, threatened to sell its half of the property to another party. The Edlers then purchased the limited partnership interest, becoming owners of 100 percent of the property. At some point Lucero offered plaintiffs $30,000 as their commission. This offer was refused because it was only one-half of the amount thought by plaintiffs to be due them.

Payment of the full amount claimed by plaintiffs was not forthcoming and this action ensued. Trial to the court culminated in judgment for Harding ($20,000) and for Farland ($40,000) against Lucero and 2000 Arapahoe, jointly and severally.

## I.

On appeal, defendants first contend that the evidence does not support the judgments. They take the position that the agreements of March 1981 expressly provide that plaintiffs were to receive commissions if and only if the 100 percent sale contemplated therein occurred. Citing *Scott v. Huntzinger*, 148 Colo. 225, 365 P.2d 692 (1961), they argue that each plaintiff's right to a commission depends entirely upon the terms of that agreement as a contract of the brokers' employment and that plaintiffs therefore have no right to any commission because (1) the 100 percent deal fell through and (2) the two separate and unrelated transactions by which the property was subsequently sold to the Edlers embodied entirely new terms. We do not agree.

Sufficiently definite oral listing contracts for the sale of real estate are valid and may be implied from surrounding circumstances. *See Hayes v. North Table Mountain Corp.*, 43 Colo.App. 467, 608 P.2d 830 (1979). Moreover, unless the listing agreement specifies otherwise, a real estate broker is entitled to receive a commission when he produces a buyer who is ready, willing, and able to purchase the subject property on the terms specified by the seller. *Mack v. McKanna*, 687 P.2d 1326 (Colo.App.1984).

"[A] seller may not circumvent a broker and appropriate his client, change the terms of sale, and sell directly in order to avoid a commission." *Becker v. Arnold*, 42 Colo.App. 178, 591 P.2d 596 (1979) *citing Brewer v. Williams*, 147 Colo. 146, 362 P.2d 1033 (1961). Absent bad faith or culpable conduct by the seller, however, this rule is not applicable where a sale does not go through and further negotiations occur between the seller and the broker's client resulting in a transaction not contemplated by the terms of the listing agreement. *See Becker v. Arnold, supra, citing Scott v. Huntzinger, supra.*

Here, defendants' argument misconstrues the trial court's findings and conclu-

sions. As we interpret them, the court found that the fall 1980 discussions between Lucero and Farland resulted in an oral listing agreement. The court further found that this agreement was modified, as evidenced by the contract of late March 1981, to provide that a $100,000 commission would be paid, rather than a seven percent commission, upon sale of 100 percent of the property. The record supports the conclusions that the oral listing agreement was the source of plaintiffs' employment and that it, as subsequently modified in writing, governed the relations of the parties through the time of the final sale to the Edlers. Thus, defendants' reliance on *Scott v. Huntzinger, supra,* is misplaced: Here, the entire negotiation and sales process, including the final sale, was contemplated by an antecedent employment agreement not dependent upon a particular transaction.

The trial court also found that plaintiffs were the procuring cause of sale to the Edlers of 100 percent of the property. Because these findings are supported by the record, we are bound thereby. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792 (1979). The trial court did not err in concluding that plaintiffs were entitled to recover the agreed-upon commissions when 100 percent of the subject property was eventually acquired by the Edlers.

## II.

■ Defendants next contend that the evidence was insufficient to justify the trial court's finding that 2000 Arapahoe was the mere alter ego of Lucero. They conclude, therefore, that the judgments as against him must fall. Again, we do not agree.

In order to ignore a corporate entity through application of the alter ego doctrine:

> "it must be shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and

that to adhere to the doctrine of corporate entity would promote injustice or fraud."

*Fink v. Montgomery Elevator Co.,* 161 Colo. 342, 421 P.2d 735 (1966) *quoting* 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 41.10.

Here, there was evidence that Lucero exercised complete control over the affairs of 2000 Arapahoe, co-mingled personal and corporate assets as suited his individual needs, and undertook in his personal capacity to sell the property pursuant to the option contract of January 6. In light of this evidence, we conclude that application of the alter ego doctrine was proper and that the trial court did not err in entering judgment against 2000 Arapahoe and against Lucero in his individual capacity, jointly and severally.

The judgment is affirmed.

PIERCE and METZGER, JJ., concur.